TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00480-CV






April LeShore, Appellant


v.


Texas Department of Family and Protective Services, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT

NO. 223,384-B, HONORABLE RICK MORRIS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 The Texas Department of Family and Protective Services (the "Department") received
a complaint regarding April LeShore's two children. After an investigation by the Department,
the trial court issued an order appointing the Department as temporary managing conservator
of the children. Ultimately, after several hearings, the trial court issued an order terminating
April LeShore's parental rights. LeShore challenges the trial court's order and asserts that the
termination order was not supported by legally or factually sufficient evidence. We will affirm the
order of the trial court.


BACKGROUND

 This case involves an appeal of an order terminating LeShore's parental rights to her
two young children, T.H. and N.T. Near the end of 2008, the Department received a complaint that
LeShore was abusing and neglecting her two children and was also smoking marijuana around them. 
At that time, LeShore was involved in a tumultuous relationship with Norman Travis, who is not
the father of either child. In fact, around the time that the Department first became involved in this
case, LeShore threw a brick through the window of Travis's truck. Shortly thereafter, an arrest
warrant was issued for LeShore, and she later pleaded guilty to the crime of criminal mischief. See
Tex. Penal Code Ann. § 28.03 (West Supp. 2010) (listing elements for crime of criminal mischief). 
After pleading guilty, LeShore was placed on probation. 

 When the Department went to investigate the complaint against LeShore, the case
worker noted that the children had no marks or bruises on them and that LeShore appeared protective
of her children, but the case worker also noted that there was a history of domestic violence between
LeShore and Travis. After learning about the arrest warrant, the Department contacted LeShore
again and informed her that she needed to make arrangements regarding the placement of her
children after she was arrested. LeShore originally suggested that the children be placed with her
sister, Tiffany Gonzales. Although Gonzales initially agreed to care for the children, she quickly
changed her mind and asked the Department to make other arrangements.

 Shortly after learning that Gonzales had changed her mind, LeShore asked Antoine
Westbrook and his wife Daris Westbrook to take temporary custody of the children. Antoine was
LeShore's bail bondsman. Although LeShore had not known Antoine prior to her arrest, she
mentioned to Antoine during their discussions that her sister had relinquished custody of
the children, and he agreed to take temporary custody of them. Ultimately, the Westbrooks were
named as temporary possessory conservators of the children. See Tex. Fam. Code Ann. § 153.376
(West 2008) (setting out rights and duties of nonparent appointed as possessory conservator).

 During its investigation of the complaint, the Department continued to learn details
regarding the acts of domestic abuse between Travis and LeShore. Consequently, the Department
requested that the trial court issue an order enjoining LeShore and Travis from contacting or
associating with one another. In January 2009, the trial court issued an order appointing the
Department as temporary managing conservator of the children and prohibiting LeShore from
communicating with Travis or from coming within 100 yards of his house. That prohibition was in
effect from January 2009 through the final hearing before the trial court in June 2010. The order also
prohibited Travis from communicating with LeShore and her children or from visiting their home. 
Under the Department's reunification plan, LeShore was also ordered to submit to psychological
evaluations, complete anger-management classes as well as parenting classes, maintain employment,
comply with the terms of her probation, pay child support, and participate in regular visits with
her children.

 After monitoring LeShore's progress for over a year and after various hearings before
the trial court, the Department eventually moved to terminate LeShore's parental rights. At the
conclusion of the final hearing in this case, the trial court issued an order terminating LeShore's
rights. In its order, the trial court found that LeShore had "engaged in conduct and knowingly
placed the children with persons who engaged in conduct which endangers the physical and
emotional well-being of the children" and that LeShore had "failed to comply with the provisions
of a court order that specifically established the actions necessary for the parent to obtain the return
of the children who" had been in the Department's care "as a result of the children's removal . . . for
the abuse or neglect of the child[ren]." Furthermore, the trial court determined that terminating
LeShore's parental rights was "in the best interest of the children." The trial court also appointed
the Department as managing conservator of the children. See Tex. Fam. Code Ann. § 153.371
(West 2008) (explaining rights and duties of nonparent appointed as sole managing conservator).

 Subsequent to issuing its termination order, the trial court filed various findings of
fact and conclusions of law supporting its termination order. Among other things, the trial court
found that LeShore and Travis had "engaged in domestic violence with each other" and "had
engaged in domestic violence with each other in the presence of" the children, that the trial court
enjoined LeShore from communicating with Travis or "[c]oming within 100 yards" of his house, that
the injunction remained in effect "through the final hearing in this case," and that LeShore continued
to associate with Travis throughout the pendency of the case. In its findings of fact, the trial court
also listed numerous instances in which LeShore violated the injunction by communicating or
associating with Travis. 

 In its conclusions of law, the trial court repeated its prior determinations that were
made in the termination order and then provided some additional explanation. In particular, the court
determined that LeShore "engaged in conduct and knowingly placed the children with persons who
engaged in conduct which endangered the physical and emotional well-being of the children by
engaging in domestic violence with" Travis, "by engaging in domestic violence with" Travis in front
of her children, and by "continuing to associate with . . . Travis throughout the entire pendency of
this case." Next, the trial court concluded that LeShore "failed to comply with the provisions of a
court order that specifically established the actions necessary for the parent to obtain the return of
the children who had been in the temporary managing conservatorship of the Department" due to
"the children's removal from the parent . . . for the abuse or neglect of the children." Finally, the
trial court determined that it was in the best interest of the children to terminate LeShore's parental
rights. (1)

 LeShore appeals the trial court's termination order.


STANDARD OF REVIEW

 In this case, LeShore challenges the sufficiency of the evidence supporting the trial
court's order terminating her parental rights. In order to terminate a parent's rights to his or her
children, the factfinder must find by clear-and-convincing evidence that the parent has engaged in
conduct that the family code has listed as grounds for termination and must also find that termination
is in the children's best interest. In re C.H., 89 S.W.3d 17, 23 (Tex. 2002); see Tex. Fam. Code Ann.
§ 161.001 (West Supp. 2010). Under the family code, clear-and-convincing evidence "means
the measure or degree of proof that will produce in the mind of the trier of fact a firm belief
or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann.
§ 101.007 (West 2008).

 For legal-sufficiency challenges under a clear-and-convincing standard, a reviewing
court looks "at all the evidence in the light most favorable to the finding to determine whether
a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." 
In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). Further, the "reviewing court must assume that the
factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.
A corollary to this requirement is that a court should disregard all evidence that a reasonable
factfinder could have disbelieved or found to have been incredible." Id. at 266. 

 For factual-sufficiency challenges under this standard, a reviewing court "must give
due consideration to evidence that the factfinder could reasonably have found to be clear and
convincing." Id. When making this determination, the inquiry is whether the evidence would allow
a factfinder to reasonably form a firm belief or conviction about the truth of the allegations. Id. "If,
in light of the entire record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not reasonably have formed
a firm belief or conviction, then the evidence is factually insufficient." Id.; see also In re C.H.,
89 S.W.3d at 26 (explaining that courts must recognize "constitutional underpinnings of the parent-child relationship" but must also balance that right against emotional and physical interests of child).


DISCUSSION

 In a single issue on appeal, LeShore contends that the trial court erred by terminating
her parental rights because "the Department failed to present evidence necessary to" support either
of the statutory bases upon which termination was granted. (2) Specifically, LeShore contends that there is insufficient evidence to show that she engaged in conduct or knowingly placed her children
with persons who engaged in conduct that endangered their physical or emotional well-being,
see Tex. Fam. Code Ann. § 161.001(1)(E), or failed to comply with the terms of a court order that
specifically established the actions necessary for her to obtain the return of her children, see id.
§ 161.001(O). (3) In this issue, LeShore challenges both the legal and the factual sufficiency of the
evidence supporting the trial court's order.

 As mentioned above, the Department became involved in this case after receiving
complaints that LeShore's children were being abused or neglected. After an initial investigation,
the Department learned that LeShore was in an abusive relationship with Travis and that LeShore
had been arrested for throwing a brick through the window of Travis's vehicle. Accordingly, the
Department asked for and the trial court issued an order in December 2008 that prohibited LeShore
from communicating with Travis or coming within 100 yards of his house.

 During the termination hearing, evidence was presented regarding the abusive nature
of LeShore's relationship with Travis. For example, an employee for the Department, Melinda
Canava, testified that there was domestic violence between Travis and LeShore. In her testimony,
LeShore admitted that Travis physically assaulted her. In addition, LeShore stated that she had
called the police on several occasions because of the abuse. Moreover, LeShore stated that on the
same day that she shattered the window of Travis's truck, someone broke several of the windows
to her home. Regarding her children, LeShore testified that to the best of her knowledge, Travis
never abused her children, but she did acknowledge that Travis abused her in front of the children
"on a few occasions" and that allowing children to observe that type of violence was detrimental to
their well-being. LeShore also testified that Travis is not capable of being around children. When
discussing the abuse that the children observed, Canava agreed that if a child observes domestic
violence, it can be detrimental to the child's welfare and emotional well-being.

 In addition to the testimony regarding the abuse by Travis, evidence was also
introduced demonstrating that after the trial court issued an order prohibiting LeShore from
associating with Travis and prohibiting Travis from communicating with the children, LeShore
continued her romantic relationship with Travis and allowed Travis to visit the children. In fact,
LeShore admitted that Travis physically assaulted her after the order was issued. Moreover, she
testified that she disregarded the court's order because she was trying to get Travis's issues under
control and believed that she had an arrangement with the foster parents (the Westbrooks) that would
allow her to continue to see Travis and work through their family issues. However, she asserted that
she stopped communicating with Travis in either March or July 2009 and regrets ever being involved
with him. Further, LeShore acknowledged that Travis would like to rekindle their relationship and
that Travis was paying her attorney's fees, but she testified that she had not been in a relationship
with him for approximately one year. 

 In addition, Canava and another Department employee, Lee Watson, both testified
that several months after the court issued its order, they saw LeShore and Travis exit his home and
drive off in his truck. Furthermore, Antoine testified that Travis would drive LeShore to her visits
with her children and that LeShore asked him to drive her to Travis's house. Antoine also testified
that over eight months after the trial court issued its order, he observed LeShore and Travis walk into
a convenience store together and then drive off together. (4) Finally, Antoine related that around the
same time that he saw LeShore with Travis at the convenience store, T.H. informed him that Travis
was present during one of her visits with LeShore.

 In her briefs, LeShore contends that the evidence summarized above was insufficient
to support the trial court's termination order. In particular, LeShore argues that the termination
order was improperly "based solely upon conditions which existed in the distant past but no longer
exist at the time of trial." See, e.g., Wetzel v. Wetzel, 715 S.W.2d 387, 391 (Tex. App.--Dallas 1986,
no writ) (deciding whether abuse that occurred four years before termination hearing could support
termination when mother has been cured of her mental illness and explaining that events occurring
in distant past are not sufficient to terminate parental rights in absence of showing of present or
future danger to child); Johnson v. Jefferson County Child Welfare Unit, 557 S.W.2d 569, 571-72
(Tex. Civ. App.--Beaumont 1977, no writ) (stating that sole act supporting termination was
insufficient because it occurred three years before termination hearing and because there was no
evidence of similar conduct). Specifically, LeShore contends that no evidence or testimony was
offered showing that she was still involved with Travis at the time of the hearing. To the contrary,
LeShore points to her own testimony as well as Travis's testimony in which they testified that they
were no longer romantically involved and had not spoken in months. Further, she argues that the
evidence presented at trial, even if viewed in the light most favorable to the trial court's order,
demonstrated that the last time that she and Travis were together was when they were observed at
the convenience store. Moreover, LeShore notes that the convenience-store incident occurred
approximately eight months before the termination hearing.

 In addition to the arguments above, LeShore asserts that the order is improper because
no evidence or testimony was presented demonstrating that the conduct that previously endangered
the children "is likely to recur, and that the children are likely to be in danger if they stay in the
possession of their parent in the future." See, e.g., In re K.M.M., 993 S.W.2d 225, 228 (Tex.
App.--Eastland 1999, no pet.) (summarizing testimony from Department employee that indicated
she would be concerned about child's safety if he was placed with father, who had been convicted
of sexually assaulting infant). In making this assertion, LeShore notes that although two employees
for the Department testified at the hearing, neither of them explicitly stated that LeShore's prior
relationship posed a future threat to her children's well-being or that "there was a likelihood the
relationship would continue in the future." For these reasons, LeShore insists that the trial court's
termination order is not supported by legally or factually sufficient evidence.

 Although LeShore correctly points out that the only individuals providing testimony
regarding the status of her relationship with Travis at the time of the final hearing were her and
Travis, the trial court, as the factfinder, was the sole arbiter of the witnesses' credibility. See In re
J.O.A., 283 S.W.3d 336, 346 (Tex. 2009). In making its credibility determination, the trial court was
free to consider LeShore's testimony that she was aware of the requirements of the court's order but
chose to ignore them by attempting to enter into an agreement with the Westbrooks that would allow
her and Travis to spend time with the children and to consider that LeShore continued to associate
with Travis months after being ordered not to. In addition, in light of the various violations of the
no-contact order and in light of the evidence showing that a violation had occurred within eight
months of the termination hearing, the trial court could reasonably infer that LeShore would continue
to associate with Travis even if ordered not to. See Davis v. Travis County Child Welfare Unit,
564 S.W.2d 415, 421 (Tex. Civ. App.--Austin 1978, no writ) (explaining that factfinder may infer
that parent's future conduct can be gauged by past behavior).

 Furthermore, while it is true that some courts have held that isolated incidents
occurring in the distant past were not sufficient to support a termination order, LeShore has pointed
to no case asserting that events occurring a mere eight months before a termination hearing would
qualify as occurring in the distant past. Moreover, rather than describing a discrete incident of abuse,
the evidence presented at trial demonstrated that there was a pattern of abuse between LeShore and
Travis over an extended period of time. In addition, the evidence also indicated that LeShore's
children had witnessed the abuse on more than one occasion and that LeShore continued to provide
Travis with access to her children even after the trial court had ordered her not to. See In re M.R.,
243 S.W.3d 807, 818-19 (Tex. App.--Fort Worth 2007, no pet.) (considering fact that mother
exposed her children to domestic violence, including incident where mother was "smacked" in front
of child, as evidence of endangerment under subsection (E)). Finally, testimony was presented
asserting that witnessing domestic abuse is contrary to the well-being of children and can be
emotionally damaging.

 In light of the preceding, regardless of whether the evidence is viewed in the light
most favorable to the trial court's ruling, we must conclude that a reasonable trier of fact could have
formed a firm belief or conviction that LeShore had engaged in conduct or knowingly placed her
children with persons who had engaged in conduct that endangered their physical or emotional
well-being. See Tex. Fam. Code Ann. § 161.001(1)(E). Accordingly, we must conclude that the trial
court's determination is supported by legally and factually sufficient evidence. Because only one
predicate finding under section 161.001(1) is necessary to support a termination order, we need not
address LeShore's challenge to the evidence supporting termination under subsection 161.001(O)
for failure to comply with the trial court's order. See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003). 
Therefore, we overrule LeShore's sole issue on appeal.


CONCLUSION

 Having overruled LeShore's sole issue on appeal, we affirm the order of the
trial court.


 __________________________________________

 David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: November 10, 2011
1. The trial court also stated that it was "in the best interest of the children to remain in the
home of Antoine Westbrook and Daris Westbrook."
2. During oral argument and in post-submission briefing, the Department contended that
LeShore waived her issue on appeal. In making this assertion, the Department relied on provisions
of section 263.405 of the family code that were in effect during the time relevant to this appeal. See
Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 9, 2001 Tex. Gen. Laws 2395, 2397-98 (enacting
section 263.405), amended by Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen.
Laws 332, 332 (adding subsection 263.405(i)) ("former Tex. Fam. Code Ann. § 263.405"), amended
by Act of May 5, 2011, 82d Leg., R.S., ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349. That statute
required a party appealing a final order to file within fifteen days of the order being signed a
statement of points listing the issues that he intends to raise on appeal. Former Tex. Fam. Code Ann.
§ 263.405(b). That statute also stated that an "appellate court may not consider any issue that was
not specifically presented to the trial court in a timely filed statement of points." Id. § 263.405(i). 
It is worth noting that after this appeal was filed, the legislature removed both of the provisions
described above from section 263.405 of the family code. Act of May 5, 2011, 82d Leg., R.S.,
ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349 (repealing subsections 263.405(b)(1) and 263.405(d)
through 263.405(i)). Because LeShore did not file a statement of points within fifteen days of the
order being signed, the Department argued that LeShore preserved no issues for appeal.


 Prior to the final order being issued, LeShore's trial counsel filed two motions to withdraw
as counsel. Although the record does not indicate that the trial court ever ruled on those motions,
LeShore's trial counsel did not file a statement of points within fifteen days of the order being
signed. However, within the fifteen-day deadline, LeShore filed her own notice of appeal, which
included two appellate issues challenging the sufficiency of the evidence supporting the trial court's
termination determination. In addition, the trial court did not appoint appellate counsel for LeShore
until after the fifteen-day deadline had expired. Within a few days of LeShore being appointed an
appellate counsel, her new attorney filed a statement of points containing four issues for appeal,
including the sufficiency challenge argued in her appellate briefs. Furthermore, after LeShore filed
her statement of points, the trial court concluded that her appeal was not frivolous.


 Although the Department correctly pointed out that LeShore did not file a statement of
points within the fifteen-day deadline, in light of the preceding, in light of the fundamental liberty
interest at issue, and in the interests of justice, we address her issue on appeal. See In re S.K.A.,
236 S.W.3d 875, 894 (Tex. App.--Texarkana 2007, pet. denied) (concluding that barring appellate
review of termination proceeding under subsection 263.405(i) for indigent parent not provided with
appellate counsel is fundamentally unfair and, therefore, deeming statement of points timely filed);
In re D.R.L.M., 84 S.W.3d 281, 291 (Tex. App.--Fort Worth 2002, pet. denied) (determining that
failure to file statement of points by fifteen-day deadline does not deprive court of jurisdiction over
appellate issues if appellant timely filed notice of appeal); cf. In re J.O.A., 283 S.W.3d 336, 347
(Tex. 2009) (finding that subsection 263.405(i) was unconstitutional to extent that it prevented court
from addressing appellant's claims when appellant's lawyer filed motion to withdraw from case after
final order was signed but failed to file statement of points and when appellate counsel was not
appointed until after fifteen-day deadline); In re D.M., 244 S.W.3d 397, 414-15 (Tex. App.--Waco
2007, no pet.) (concluding that subsection 263.405(b) and 263.405(i) violated appellant's due
process rights where appellate counsel was not appointed until after deadline for filing statement
of points). But see Bermea v. Texas Dep't of Family & Protective Servs., 265 S.W.3d 34, 38
(Tex. App.--Houston [1st Dist.] 2008, pet. denied) (refusing to address sufficiency arguments under
subsection 263.405(i) when record did not contain statement of points); In re T.T., 228 S.W.3d 312,
316 (Tex. App.--Houston [14th Dist.] 2007, pet. denied) (determining that failure to timely file
statement of points waives issues on appeal).
3. We note that LeShore does not challenge the trial court's determination that the termination
of her parental rights was in the children's best interest.
4. During the hearing, both LeShore and Travis admitted that they were in the convenience
store on the night in question, but they denied going there together and instead insisted that their
presence in the store was simply a coincidence. Antoine disputed this characterization and testified
that he saw the two of them come into the store together and that they both drove off in Travis's
truck. In addition, a recording from the convenience store was admitted into evidence, and it showed
that a man and a woman entered the convenience store at the same time. When discussing the
videotape, the trial court stated that it "totally contradicts" the testimony of LeShore and Travis. See
In re J.O.A., 283 S.W.3d at 346 (recognizing that factfinder is sole arbiter of witness's credibility).