# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00480-CV

**April LeShore, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 223,384-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

The Texas Department of Family and Protective Services (the "Department") received a complaint regarding April LeShore's two children. After an investigation by the Department, the trial court issued an order appointing the Department as temporary managing conservator of the children. Ultimately, after several hearings, the trial court issued an order terminating April LeShore's parental rights. LeShore challenges the trial court's order and asserts that the termination order was not supported by legally or factually sufficient evidence. We will affirm the order of the trial court.

### BACKGROUND

This case involves an appeal of an order terminating LeShore's parental rights to her two young children, T.H. and N.T. Near the end of 2008, the Department received a complaint that LeShore was abusing and neglecting her two children and was also smoking marijuana around them.

At that time, LeShore was involved in a tumultuous relationship with Norman Travis, who is not the father of either child. In fact, around the time that the Department first became involved in this case, LeShore threw a brick through the window of Travis's truck. Shortly thereafter, an arrest warrant was issued for LeShore, and she later pleaded guilty to the crime of criminal mischief. *See* Tex. Penal Code Ann. § 28.03 (West Supp. 2010) (listing elements for crime of criminal mischief). After pleading guilty, LeShore was placed on probation.

When the Department went to investigate the complaint against LeShore, the case worker noted that the children had no marks or bruises on them and that LeShore appeared protective of her children, but the case worker also noted that there was a history of domestic violence between LeShore and Travis. After learning about the arrest warrant, the Department contacted LeShore again and informed her that she needed to make arrangements regarding the placement of her children after she was arrested. LeShore originally suggested that the children be placed with her sister, Tiffany Gonzales. Although Gonzales initially agreed to care for the children, she quickly changed her mind and asked the Department to make other arrangements.

Shortly after learning that Gonzales had changed her mind, LeShore asked Antoine Westbrook and his wife Daris Westbrook to take temporary custody of the children. Antoine was LeShore's bail bondsman. Although LeShore had not known Antoine prior to her arrest, she mentioned to Antoine during their discussions that her sister had relinquished custody of the children, and he agreed to take temporary custody of them. Ultimately, the Westbrooks were named as temporary possessory conservators of the children. *See* Tex. Fam. Code Ann. § 153.376 (West 2008) (setting out rights and duties of nonparent appointed as possessory conservator).

2

During its investigation of the complaint, the Department continued to learn details regarding the acts of domestic abuse between Travis and LeShore. Consequently, the Department requested that the trial court issue an order enjoining LeShore and Travis from contacting or associating with one another. In January 2009, the trial court issued an order appointing the Department as temporary managing conservator of the children and prohibiting LeShore from communicating with Travis or from coming within 100 yards of his house. That prohibition was in effect from January 2009 through the final hearing before the trial court in June 2010. The order also prohibited Travis from communicating with LeShore and her children or from visiting their home. Under the Department's reunification plan, LeShore was also ordered to submit to psychological evaluations, complete anger-management classes as well as parenting classes, maintain employment, comply with the terms of her probation, pay child support, and participate in regular visits with her children.

After monitoring LeShore's progress for over a year and after various hearings before the trial court, the Department eventually moved to terminate LeShore's parental rights. At the conclusion of the final hearing in this case, the trial court issued an order terminating LeShore's rights. In its order, the trial court found that LeShore had "engaged in conduct and knowingly placed the children with persons who engaged in conduct which endangers the physical and emotional well-being of the children" and that LeShore had "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children who" had been in the Department's care "as a result of the children's removal . . . for the abuse or neglect of the child[ren]." Furthermore, the trial court determined that terminating

3

LeShore's parental rights was "in the best interest of the children." The trial court also appointed the Department as managing conservator of the children. *See* Tex. Fam. Code Ann. § 153.371 (West 2008) (explaining rights and duties of nonparent appointed as sole managing conservator).

Subsequent to issuing its termination order, the trial court filed various findings of fact and conclusions of law supporting its termination order. Among other things, the trial court found that LeShore and Travis had "engaged in domestic violence with each other" and "had engaged in domestic violence with each other in the presence of" the children, that the trial court enjoined LeShore from communicating with Travis or "[c]oming within 100 yards" of his house, that the injunction remained in effect "through the final hearing in this case," and that LeShore continued to associate with Travis throughout the pendency of the case. In its findings of fact, the trial court also listed numerous instances in which LeShore violated the injunction by communicating or associating with Travis.

In its conclusions of law, the trial court repeated its prior determinations that were made in the termination order and then provided some additional explanation. In particular, the court determined that LeShore "engaged in conduct and knowingly placed the children with persons who engaged in conduct which endangered the physical and emotional well-being of the children by engaging in domestic violence with" Travis, "by engaging in domestic violence with" Travis in front of her children, and by "continuing to associate with . . . Travis throughout the entire pendency of this case." Next, the trial court concluded that LeShore "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children who had been in the temporary managing conservatorship of the Department" due to

4

"the children's removal from the parent . . . for the abuse or neglect of the children." Finally, the trial court determined that it was in the best interest of the children to terminate LeShore's parental rights.[1]

LeShore appeals the trial court's termination order.

**STANDARD OF REVIEW**

In this case, LeShore challenges the sufficiency of the evidence supporting the trial court's order terminating her parental rights. In order to terminate a parent's rights to his or her children, the factfinder must find by clear-and-convincing evidence that the parent has engaged in conduct that the family code has listed as grounds for termination and must also find that termination is in the children's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002); *see* Tex. Fam. Code Ann. § 161.001 (West Supp. 2010). Under the family code, clear-and-convincing evidence "means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008).

For legal-sufficiency challenges under a clear-and-convincing standard, a reviewing court looks "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Further, the "reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.

---

[1] The trial court also stated that it was "in the best interest of the children to remain in the home of Antoine Westbrook and Daris Westbrook."

5

A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* at 266.

For factual-sufficiency challenges under this standard, a reviewing court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* When making this determination, the inquiry is whether the evidence would allow a factfinder to reasonably form a firm belief or conviction about the truth of the allegations. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*; *see also In re C.H.*, 89 S.W.3d at 26 (explaining that courts must recognize "constitutional underpinnings of the parent-child relationship" but must also balance that right against emotional and physical interests of child).

**DISCUSSION**

In a single issue on appeal, LeShore contends that the trial court erred by terminating her parental rights because "the Department failed to present evidence necessary to" support either of the statutory bases upon which termination was granted.[2] Specifically, LeShore contends that

---

[2] During oral argument and in post-submission briefing, the Department contended that LeShore waived her issue on appeal. In making this assertion, the Department relied on provisions of section 263.405 of the family code that were in effect during the time relevant to this appeal. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 9, 2001 Tex. Gen. Laws 2395, 2397-98 (enacting section 263.405), *amended by* Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (adding subsection 263.405(i)) ("former Tex. Fam. Code Ann. § 263.405"), *amended by* Act of May 5, 2011, 82d Leg., R.S., ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349. That statute required a party appealing a final order to file within fifteen days of the order being signed a statement of points listing the issues that he intends to raise on appeal. Former Tex. Fam. Code Ann. § 263.405(b). That statute also stated that an "appellate court may not consider any issue that was

there is insufficient evidence to show that she engaged in conduct or knowingly placed her children

with persons who engaged in conduct that endangered their physical or emotional well-being,

---

not specifically presented to the trial court in a timely filed statement of points." *Id.* § 263.405(i). It is worth noting that after this appeal was filed, the legislature removed both of the provisions described above from section 263.405 of the family code. Act of May 5, 2011, 82d Leg., R.S., ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349 (repealing subsections 263.405(b)(1) and 263.405(d) through 263.405(i)). Because LeShore did not file a statement of points within fifteen days of the order being signed, the Department argued that LeShore preserved no issues for appeal.

Prior to the final order being issued, LeShore's trial counsel filed two motions to withdraw as counsel. Although the record does not indicate that the trial court ever ruled on those motions, LeShore's trial counsel did not file a statement of points within fifteen days of the order being signed. However, within the fifteen-day deadline, LeShore filed her own notice of appeal, which included two appellate issues challenging the sufficiency of the evidence supporting the trial court's termination determination. In addition, the trial court did not appoint appellate counsel for LeShore until after the fifteen-day deadline had expired. Within a few days of LeShore being appointed an appellate counsel, her new attorney filed a statement of points containing four issues for appeal, including the sufficiency challenge argued in her appellate briefs. Furthermore, after LeShore filed her statement of points, the trial court concluded that her appeal was not frivolous.

Although the Department correctly pointed out that LeShore did not file a statement of points within the fifteen-day deadline, in light of the preceding, in light of the fundamental liberty interest at issue, and in the interests of justice, we address her issue on appeal. *See In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied) (concluding that barring appellate review of termination proceeding under subsection 263.405(i) for indigent parent not provided with appellate counsel is fundamentally unfair and, therefore, deeming statement of points timely filed); *In re D.R.L.M.*, 84 S.W.3d 281, 291 (Tex. App.—Fort Worth 2002, pet. denied) (determining that failure to file statement of points by fifteen-day deadline does not deprive court of jurisdiction over appellate issues if appellant timely filed notice of appeal); *cf. In re J.O.A.*, 283 S.W.3d 336, 347 (Tex. 2009) (finding that subsection 263.405(i) was unconstitutional to extent that it prevented court from addressing appellant's claims when appellant's lawyer filed motion to withdraw from case after final order was signed but failed to file statement of points and when appellate counsel was not appointed until after fifteen-day deadline); *In re D.M.*, 244 S.W.3d 397, 414-15 (Tex. App.—Waco 2007, no pet.) (concluding that subsection 263.405(b) and 263.405(i) violated appellant's due process rights where appellate counsel was not appointed until after deadline for filing statement of points). *But see Bermea v. Texas Dep't of Family & Protective Servs.*, 265 S.W.3d 34, 38 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (refusing to address sufficiency arguments under subsection 263.405(i) when record did not contain statement of points); *In re T.T.*, 228 S.W.3d 312, 316 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (determining that failure to timely file statement of points waives issues on appeal).

*see* Tex. Fam. Code Ann. § 161.001(1)(E), or failed to comply with the terms of a court order that specifically established the actions necessary for her to obtain the return of her children, *see id.* § 161.001(O).[3] In this issue, LeShore challenges both the legal and the factual sufficiency of the evidence supporting the trial court's order.

As mentioned above, the Department became involved in this case after receiving complaints that LeShore's children were being abused or neglected. After an initial investigation, the Department learned that LeShore was in an abusive relationship with Travis and that LeShore had been arrested for throwing a brick through the window of Travis's vehicle. Accordingly, the Department asked for and the trial court issued an order in December 2008 that prohibited LeShore from communicating with Travis or coming within 100 yards of his house.

During the termination hearing, evidence was presented regarding the abusive nature of LeShore's relationship with Travis. For example, an employee for the Department, Melinda Canava, testified that there was domestic violence between Travis and LeShore. In her testimony, LeShore admitted that Travis physically assaulted her. In addition, LeShore stated that she had called the police on several occasions because of the abuse. Moreover, LeShore stated that on the same day that she shattered the window of Travis's truck, someone broke several of the windows to her home. Regarding her children, LeShore testified that to the best of her knowledge, Travis never abused her children, but she did acknowledge that Travis abused her in front of the children "on a few occasions" and that allowing children to observe that type of violence was detrimental to

---

[3] We note that LeShore does not challenge the trial court's determination that the termination of her parental rights was in the children's best interest.

their well-being. LeShore also testified that Travis is not capable of being around children. When discussing the abuse that the children observed, Canava agreed that if a child observes domestic violence, it can be detrimental to the child's welfare and emotional well-being.

In addition to the testimony regarding the abuse by Travis, evidence was also introduced demonstrating that after the trial court issued an order prohibiting LeShore from associating with Travis and prohibiting Travis from communicating with the children, LeShore continued her romantic relationship with Travis and allowed Travis to visit the children. In fact, LeShore admitted that Travis physically assaulted her after the order was issued. Moreover, she testified that she disregarded the court's order because she was trying to get Travis's issues under control and believed that she had an arrangement with the foster parents (the Westbrooks) that would allow her to continue to see Travis and work through their family issues. However, she asserted that she stopped communicating with Travis in either March or July 2009 and regrets ever being involved with him. Further, LeShore acknowledged that Travis would like to rekindle their relationship and that Travis was paying her attorney's fees, but she testified that she had not been in a relationship with him for approximately one year.

In addition, Canava and another Department employee, Lee Watson, both testified that several months after the court issued its order, they saw LeShore and Travis exit his home and drive off in his truck. Furthermore, Antoine testified that Travis would drive LeShore to her visits with her children and that LeShore asked him to drive her to Travis's house. Antoine also testified that over eight months after the trial court issued its order, he observed LeShore and Travis walk into

9

a convenience store together and then drive off together.[4]  Finally, Antoine related that around the same time that he saw LeShore with Travis at the convenience store, T.H. informed him that Travis was present during one of her visits with LeShore.

In her briefs, LeShore contends that the evidence summarized above was insufficient to support the trial court's termination order.  In particular, LeShore argues that the termination order was improperly "based solely upon conditions which existed in the distant past but no longer exist at the time of trial." *See, e.g.*, *Wetzel v. Wetzel*, 715 S.W.2d 387, 391 (Tex. App.—Dallas 1986, no writ) (deciding whether abuse that occurred four years before termination hearing could support termination when mother has been cured of her mental illness and explaining that events occurring in distant past are not sufficient to terminate parental rights in absence of showing of present or future danger to child); *Johnson v. Jefferson County Child Welfare Unit*, 557 S.W.2d 569, 571-72 (Tex. Civ. App.—Beaumont 1977, no writ) (stating that sole act supporting termination was insufficient because it occurred three years before termination hearing and because there was no evidence of similar conduct).  Specifically, LeShore contends that no evidence or testimony was offered showing that she was still involved with Travis at the time of the hearing.  To the contrary, LeShore points to her own testimony as well as Travis's testimony in which they testified that they

---

[4] During the hearing, both LeShore and Travis admitted that they were in the convenience store on the night in question, but they denied going there together and instead insisted that their presence in the store was simply a coincidence.  Antoine disputed this characterization and testified that he saw the two of them come into the store together and that they both drove off in Travis's truck. In addition, a recording from the convenience store was admitted into evidence, and it showed that a man and a woman entered the convenience store at the same time.  When discussing the videotape, the trial court stated that it "totally contradicts" the testimony of LeShore and Travis. *See In re J.O.A.*, 283 S.W.3d at 346 (recognizing that factfinder is sole arbiter of witness's credibility).

10

were no longer romantically involved and had not spoken in months. Further, she argues that the evidence presented at trial, even if viewed in the light most favorable to the trial court's order, demonstrated that the last time that she and Travis were together was when they were observed at the convenience store. Moreover, LeShore notes that the convenience-store incident occurred approximately eight months before the termination hearing.

In addition to the arguments above, LeShore asserts that the order is improper because no evidence or testimony was presented demonstrating that the conduct that previously endangered the children "is likely to recur, and that the children are likely to be in danger if they stay in the possession of their parent in the future." *See, e.g.*, *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.) (summarizing testimony from Department employee that indicated she would be concerned about child's safety if he was placed with father, who had been convicted of sexually assaulting infant). In making this assertion, LeShore notes that although two employees for the Department testified at the hearing, neither of them explicitly stated that LeShore's prior relationship posed a future threat to her children's well-being or that "there was a likelihood the relationship would continue in the future." For these reasons, LeShore insists that the trial court's termination order is not supported by legally or factually sufficient evidence.

Although LeShore correctly points out that the only individuals providing testimony regarding the status of her relationship with Travis at the time of the final hearing were her and Travis, the trial court, as the factfinder, was the sole arbiter of the witnesses' credibility. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). In making its credibility determination, the trial court was free to consider LeShore's testimony that she was aware of the requirements of the court's order but

11

chose to ignore them by attempting to enter into an agreement with the Westbrooks that would allow her and Travis to spend time with the children and to consider that LeShore continued to associate with Travis months after being ordered not to. In addition, in light of the various violations of the no-contact order and in light of the evidence showing that a violation had occurred within eight months of the termination hearing, the trial court could reasonably infer that LeShore would continue to associate with Travis even if ordered not to. *See Davis v. Travis County Child Welfare Unit*, 564 S.W.2d 415, 421 (Tex. Civ. App.—Austin 1978, no writ) (explaining that factfinder may infer that parent's future conduct can be gauged by past behavior).

Furthermore, while it is true that some courts have held that isolated incidents occurring in the distant past were not sufficient to support a termination order, LeShore has pointed to no case asserting that events occurring a mere eight months before a termination hearing would qualify as occurring in the distant past. Moreover, rather than describing a discrete incident of abuse, the evidence presented at trial demonstrated that there was a pattern of abuse between LeShore and Travis over an extended period of time. In addition, the evidence also indicated that LeShore's children had witnessed the abuse on more than one occasion and that LeShore continued to provide Travis with access to her children even after the trial court had ordered her not to. *See In re M.R.*, 243 S.W.3d 807, 818-19 (Tex. App.—Fort Worth 2007, no pet.) (considering fact that mother exposed her children to domestic violence, including incident where mother was "smacked" in front of child, as evidence of endangerment under subsection (E)). Finally, testimony was presented asserting that witnessing domestic abuse is contrary to the well-being of children and can be emotionally damaging.

In light of the preceding, regardless of whether the evidence is viewed in the light most favorable to the trial court's ruling, we must conclude that a reasonable trier of fact could have formed a firm belief or conviction that LeShore had engaged in conduct or knowingly placed her children with persons who had engaged in conduct that endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(E). Accordingly, we must conclude that the trial court's determination is supported by legally and factually sufficient evidence. Because only one predicate finding under section 161.001(1) is necessary to support a termination order, we need not address LeShore's challenge to the evidence supporting termination under subsection 161.001(O) for failure to comply with the trial court's order. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we overrule LeShore's sole issue on appeal.

## CONCLUSION

Having overruled LeShore's sole issue on appeal, we affirm the order of the trial court.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   November 10, 2011

13