Tracy Christopher, Justice
This accelerated appeal arises from a final decree in a suit in which termination of the parent-child relationship was at issue. See Tex. Fam. Code Ann. § 109.002(a-1) (West 2014 & Supp. 2017) The trial court terminated the parental rights of C.L.R. (Mother) and appellant C.D. (Father) with respect to their son, Rico.[1] The decree also concerns a little girl, Lily, whose parents are Mother and M.M.M. Their parental rights with respect to Lily were terminated; neither Mother nor M.M.M. appeals. The trial court also appointed the Texas Department of Family and Protective Services (the Department) to be Rico's and Lily's managing conservator.
On appeal, Father challenges the sufficiency of the evidence to support the sole statutory predicate for termination: constructive abandonment. See ion index="1" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20109.002">id. § 161.001(b)(1)(N). He also challenges the sufficiency of the evidence underlying the *424 finding that termination of Father's parental rights is in Rico's best interest. He does not challenge the Department's appointment as Rico's managing conservator. We conclude the evidence in the record is legally insufficient to justify termination under subsection N. We therefore reverse and render the portion of the judgment terminating Father's parental rights. We affirm the remainder of the judgment.
BACKGROUND
A. Removal
This case began following the in-home death of Rico's infant half-brother, Matthew, in August 2013. (M.M.M. is Matthew's father.) Matthew was found unresponsive and pronounced dead. The medical examiner found no signs of abuse, neglect, or trauma on Matthew and was unable to determine his cause of death.
Rico (then six years old) and Lily (then thirteen months old) lived with Mother and M.M.M. At the Department's request, Mother and M.M.M. arranged a parental child safety placement for Rico and Lily.
After Matthew's autopsy revealed no signs of foul play, the Department referred the case to Family Based Safety Services (FBSS).[2] Mother voluntarily participated in the services offered by FBSS; M.M.M. did not. Rico and Lily were returned to Mother in November 2015.
Despite two years of progress, Mother began a downslide in January 2016. She reportedly disappeared, and the Department did not find her until April. Even then, she would not permit the Department inside the home or disclose where the children were. The Department formally removed Rico and Lily at the end of April, though the Department did not find or obtain physical possession of the children until January 2017. The trial court appointed the Department as the children's temporary managing conservator at the time of removal.
There is no evidence in the record about Father's whereabouts during the period between Matthew's death and the Department's removal of Rico and Lily.
B. Trial
Trial was held in August 2017. We will discuss only the evidence relevant to the finding that Father constructively abandoned Rico, because the insufficiency of that evidence is dispositive.
1. Caseworker Amy Obot's testimony
Obot spoke with Father and encouraged him to visit Rico. Father saw Rico on one visit, for Rico's tenth birthday in April 2017. No "issues or concerns" arose during that visit. Nothing prevented Father from visiting Rico more than once.
Obot said she and Father discussed the possibility of Rico living with Father. According to Obot, Father "stated that he would rather his mother take the child and not him." The Department conducted a home study of Father's mother as a possible placement for Rico. She was ruled out due to concerns of inadequate spacing in the home and the immigration status of other adults living in the home, none of whom had a driver's license or was a U.S. citizen. The Department was concerned that if any of those adults were arrested or sent to immigration, there would be no back-up caregivers for Rico.
Father told Obot he had a job, but he did not provide support for Rico during *425 this case. He attended the first pretrial hearing in this case in May 2016 but did not attend any of the three following hearings.
Over a hearsay objection, Obot testified Father failed to submit to a drug test on May 12, 2016, the day of the show-cause hearing. She also testified, again over a hearsay objection, that Father was charged in 2011 with "possession" and in 2006 with assault. The record includes a judgment showing Father was convicted in 2011 of misdemeanor possession of marijuana and sentenced to two days in county jail. The record does not include evidence of the alleged 2006 assault charge.
Obot said Father has three other children. None of them live with him, and she does not know where they live.
On cross-examination, Obot confirmed the Department did not know where the children were from January 2016 through January 2017. She conceded Father could have been visiting and/or supporting Rico during that 12-month period.
2. Mother's testimony
Mother testified she hid Rico and Lily from the Department while this case was pending. She said Rico was not in school during that time. Nobody asked her if Father visited or maintained contact with Rico, and she did not offer any information concerning any such visits or contact.
3. Father's testimony
Father's lawyer asked him if he provided support for Rico during the period from January 2016 and January 2017, when they were not in the Department's physical custody. Father replied:
The only time I haven't helped my kids only when CPS have them. The other time, when the baby's with my mom or with the other lady beside her. I help the baby and when they were with the mom [Mother].... I help the babies. Like I haven't helped the babies only one day with CPS. When they were with my mom, I helped them. I bought diapers, clothes. I'll give money to my mom. When they were with [Mother], I was helping with the money and diapers. And when ... [Rico] was with [Mother's] mom, I would help her too.
Father testified he also visited Rico "during that time."
According to Father, the Department scheduled only two visits between him and Rico: one in April 2017, discussed above, and the second about a month before trial. Father brought Rico toys and a cake for the birthday visit in April. He did not make the second visit, Father said, because he did not finish work in time.
Father testified he would have taken the opportunity to visit Rico more frequently once the Department had physical custody of the children. He said he called "the other lady" at the Department, presumably a previous caseworker, but "every time I would call CPS, they never-I never get in contact with them." Father never called Obot. He did not write a letter or otherwise express a desire to the Department to visit Rico. Father testified he did not attend three pretrial hearings because he did not know when they were to occur. He said his court-appointed lawyer "ain't ever gave me a call."
4. Trial court's findings
The trial court made three findings relevant to Father: (1) Father constructively abandoned Rico, as described in section 161.001(b)(1)(N) of the Family Code ; (2) termination of Father's parental rights is in Rico's best interest; and (3) appointment of Father as Rico's managing conservator would significantly impair Rico's physical health or emotional development and, *426 therefore, is not in Rico's best interest. The court terminated Father's rights and appointed the Department to be Rico's managing conservator. Father timely appealed.
ANALYSIS
Parental rights can be terminated upon clear and convincing evidence that (1) the parent committed an act described in section 161.001(b)(1) of the Family Code, and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West Supp. 2017); In re J.O.A. , 283 S.W.3d 336, 344 (Tex. 2009). Only one predicate finding under section 161.001(b)(1) is necessary to support a decree of termination when there is also a finding that termination is in the child's best interest. In re A.V. , 113 S.W.3d 355, 362 (Tex. 2003).
Father raises two issues on appeal. He first contends the evidence is legally and factually insufficient to support the trial court's finding under subsection N that he constructively abandoned Rico. We agree with Father. Because the evidence is legally insufficient to support the constructive-abandonment finding, we need not consider the factual sufficiency of that finding or the legal or factual sufficiency of the evidence to support the best-interest finding. See In re S.R. , 452 S.W.3d 351, 359 (Tex. App.-Houston [14th Dist.] 2014, pet. denied) (noting that if disposition of an issue would result in rendition of judgment, court should consider that issue before addressing any issue that would result in only remand for new trial).
I. Burden of proof and standards of review
Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. See In re G.M. , 596 S.W.2d 846, 846 (Tex. 1980) ; S.R. , 452 S.W.3d at 357. Although parental rights are of constitutional magnitude, they are not absolute. In re C.H. , 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").
Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to clear and convincing evidence. See Tex. Fam. Code Ann. § 161.001 ; In re J.F.C. , 96 S.W.3d 256, 265-66 (Tex. 2002). " 'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014) ; accord J.F.C. , 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. S.R. , 452 S.W.3d at 358.
In reviewing the legal sufficiency of the evidence in a termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. See J.O.A. , 283 S.W.3d at 344 ; J.F.C. , 96 S.W.3d at 266 ; C.H. , 89 S.W.3d at 25. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could disbelieve. J.O.A. , 283 S.W.3d at 344 ; J.F.C. , 96 S.W.3d at 266.
II. Constructive abandonment
A. Legal standards
The parent-child relationship may be terminated if the Department establishes, *427 by clear and convincing evidence, both that termination is in the child's best interest and that the parent has:
(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than six months, and:
(i) the [Department] has made reasonable efforts to return the child to the parent;
(ii) the parent has not regularly visited or maintained significant contact with the child; and
(iii) the parent has demonstrated an inability to provide the child with a safe environment.
Tex. Fam. Code Ann. § 161.001(b)(1)(N) (West Supp. 2016); see In re J.E.M.M. , 532 S.W.3d 874, 883-85 (Tex. App.-Houston [14th Dist.] 2017, no pet.). If the evidence is legally insufficient on any one of these elements, the termination finding cannot be sustained. In re A.S. , 261 S.W.3d 76, 90 (Tex. App.-Houston [14th Dist.] 2008, pet. denied).
B. Application
Father concedes Rico was in the Department's managing conservatorship for not less than six months. We find the evidence legally insufficient to support a finding under part (iii) of subsection N: that Father has demonstrated an inability to provide the child with a safe environment. Accordingly, we do not consider whether the Department satisfied requirements (i) or (ii).
"Environment" refers to "the acceptability of living conditions, as well as a parent's conduct in the home." J.E.M.M. , 532 S.W.3d at 881. Courts use that definition in considering another statutory predicate for termination under section 161.001(b)(1) : subsection D, which applies when the parent knowingly left the child in "conditions or surroundings" that endangered the child's physical or emotional well-being. We see no reason not to apply the same definition in our subsection N analysis.
The record contains no evidence of Father's living conditions. Although the Department elicited testimony from both Obot and Mother about Mother's living situation, no witness was asked, for example, where Father lived, who lived with him, or how much room there would be for Rico.
Further, there is no evidence about Father's conduct in his home. The record contains a judgment of Father's conviction of misdemeanor possession of marijuana six years before trial. Obot testified Father also had an assault charge in 2006, but no other information about the alleged offense appears in the record. Notably, the record does not reflect whether he was convicted of assault.
The Department suggests Father's alleged unwillingness to care for Rico eliminates its burden to prove his inability to do so:
[Father] claims there was no evidence that he had an unsafe home, because there was no evidence his home was visited or that he did not have sufficient funds from a job. However, such argument disregards that [Father] expressly stated he did not want the child in his home while this child was in foster care. Also, though he indicated he would prefer the child be with his mom, he took no action when his mom's home study was disapproved to secure a safe home for this child. Consequently, he effectively lacked an ability to provide a safe home since he did not want the child in his home and did not take appropriate steps to secure a safe home for his child.
*428 We disagree. Given the lack of any evidence about Father's living conditions, we are unwilling to equate Father's supposed preference that Rico live with Father's mother (the only evidence of which is hearsay admitted over objection) with proof by clear and convincing evidence that he is unable to provide Rico a safe environment. The Department failed to meet its burden of proof. See A.S. , 261 S.W.3d at 90 (rejecting Department's argument that father "did not suggest that he could do anything to provide the children with a safe environment" because burden of proof was on Department to prove inability, not on father to prove ability).
C. Conclusion on constructive abandonment
Even considered in the light most favorable to the trial court's finding, we conclude the trial court could not have reasonably formed a firm belief or conviction that the requirements of subsection N were proved by clear and convincing evidence. Therefore, the evidence is legally insufficient to support the trial court's finding under subsection N. We sustain Father's first issue.
Due to our conclusion of legal insufficiency, we need not consider the factual sufficiency of the subsection N finding or the legal or factual sufficiency of the evidence to support the best-interest finding. See S.R. , 452 S.W.3d at 359.
CONCLUSION
We reverse the decree to the extent it terminates the parent-child relationship between Father and Rico, and we render judgment denying the Department's request for termination. We affirm the remainder of the decree.

We use pseudonyms or initials to refer to the children, parents, and other family members involved in this case. See Tex. Fam. Code Ann. § 109.002(d) ; Tex. R. App. P. 9.8(b)(2).

Department caseworker Amy Obot testified at trial: "[FBSS] is when the [Department] monitors the family in the home without removing the children and offers them services to alleviate the reason why the children or the family came into [Department] attention."