**Affirmed and Memorandum Opinion filed June 6, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-01089-CV

---

## IN THE INTEREST OF A.G., A CHILD

---

**On Appeal from the 310th District Court
Harris County, Texas
Trial Court Cause No. 2018-00408J**

---

## MEMORANDUM OPINION

T.D.G. (Father) appeals from a final decree terminating his parental rights and appointing the Department of Family and Protective Services (the Department) as sole managing conservator of his son, A.G. (Alex).[1] On appeal, Father challenges the legal and factual sufficiency of the evidence to support (1) the predicate grounds under which his parental rights were terminated and (2) the finding that termination was in Alex's best interest. We affirm.

---

[1] We use pseudonyms to refer to appellant, the children, and other family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Department of Family and Protective Services Investigation

A.G. (Mother) gave birth to Alex in late October 2017. Two months after his birth, the Department received notification that Mother was caring for Alex while under the influence of drugs. At that time, the Department had already removed Mother's three older children from her custody.[2] It took the Department three weeks to make contact with Mother after receiving the initial notification because Mother was not answering her telephone and the Department did not have a reliable address for the family. Once the Department was finally able to reach the family, the Department discovered they were staying at the Baytown Inn and did not have a permanent residence. Father told the Department investigator that they had been moving back and forth in between the hotel and his "homeboy's" house. Neither parent had stable employment. The couple admitted they had not taken Alex for any doctor's visits since they moved from Port Arthur where Alex was born.

Mother informed investigators that she and Father had been in a committed relationship for three years. Father said that he did not have any mental health or medical issues. However, Father said he was taking norcos for back pain, but was unable to provide the prescription. Father informed the investigator that he had other children who were living with their mother outside of Texas.

The Department concluded it was necessary to remove Alex from his parents' care due to the unstable living conditions. The Department filed a petition requesting termination of Mother's and Father's parental rights. The trial court appointed the Department as Alex's temporary managing conservator and placed

[2] Father is not the natural parent of Mother's three older children.

Alex in a foster home. The trial court ordered Father to complete a family service plan, which included Father undergoing psychological evaluations, submitting to random drug test, refraining from participating in illegal activities, and acquiring and maintaining housing that was stable for more than six months.

## II. Trial Proceedings

Bruce Jeffries of the National Screening Center testified as an expert in drug testing results. Jeffries reviewed Father's drug test results dating back to February 2018. Father's first drug test returned positive for cocaine, methamphetamine, and marijuana on the outside of his hair. Jeffries explained that the levels of marijuana on the outside of Father's hair were "extremely high," indicating that he was living in an environment "that is small in nature where the air is full of THC." Jeffries confirmed that Father's outside hair exposure dated back to shortly before Alex was born and the following months. Jeffries further testified that Father's April 2018 drug test results returned positive for cocaine in his urine. Jeffries confirmed that Father must have still been using cocaine after Alex was removed from his care due to the timing of the testing. Hair from Father's underarm was also tested in April 2018, and those test results came back positive for methamphetamine, cocaine, and marijuana on the inside and outside of the hair. In July 2018, Father's urine tests returned negative, but his underarm hair test came back positive for cocaine and marijuana on the inside and outside of the hair. Jeffries explained that underarm hair can show usage as far as four to six months back. Jeffries further testified, that the amount of cocaine in Father's hair test results diminished significantly between the April and July tests. However, Jeffries explained that Father's initial amounts of cocaine were "off the charts." According to Jeffries, Father's cocaine amounts indicated at least daily use. Jeffries explained that cocaine usage at that level can damage the right side of a person's heart and cause

a heart attack even years after that person has stopped using.

Next, the Department's caseworker, Lakeela Caraway, testified that she has been working with Mother since the Department's investigation into Mother's three other children began. Caraway testified that she reviewed the service plan with Father and confirmed that he understood it. Father's service plan required him to complete drug counseling services. Caraway explained that the only portion of that requirement that Father completed was a drug assessment and drug test, which returned positive for cocaine. Caraway testified that the court did not allow for visitation between Father and Alex because of the positive drug test results. According to Caraway, Father only contacted her two times between when Alex was removed and trial—approximately eight months. Nor did Father provide any gifts or financial support for Alex while he was in the Department's custody. Upon questioning, Caraway confirmed that Father's attorney provided her with a copy of a paycheck stub from Father's employment at Pizza Hut.

Caraway explained that Alex was doing very well in an adoptive foster home, despite not hitting his developmental milestone of crawling by the age of one. According to Caraway, Alex's foster parents ensure he makes all his doctor's appointments. Caraway further explained that Alex is very spoiled by his foster parents because he is the only child in the home. The foster parents also take Alex to visit his biological siblings and intend to adopt Alex. Caraway testified that she believes it is in Alex's best interest to terminate Father's parental rights based on his "excessive" drug use, his failure to remove Alex from a home where drug use was present, and his failure to complete his family service plan.

Next, Mother testified on her own behalf. Mother said she did not use drugs while she was pregnant, nor did she use drugs after she brought Alex home from the hospital. According to Mother, the last time she used marijuana was two

months prior to trial. She testified that the last time she used cocaine was "probably after [her other] child was taken from [her]."

Finally, Father testified. Father explained that he was unable to complete much of his service plan because he had vehicle problems that he could not afford to have repaired. Father testified that he has been working to attain sobriety and believed he would test negative for illegal substances if he was tested that day.

After Father's testimony, the court announced it was terminating both Mother's and Father's parental rights to Alex. As to Father, the trial court terminated on the predicate grounds found in Family Code sections 161.001(b)(1)(D), (E), (N), and (O). The trial court further found that termination of Father's parental rights was in Alex's best interest. The trial court signed a final decree reflecting the same and appointing the Department as Alex's sole managing conservator. Father appealed.

## ISSUES AND ANALYSIS

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1); and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Father raises four issues on appeal. In his first three issues, Father challenges the trial court's findings under sections 161.001(b)(1)(D), (E), (N), and (O). In his fourth issue, Father challenges the trial court's finding that termination of his parental rights is in Alex's best interest.

## I. Standard of Review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985);

*In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Despite the constitutional magnitude of parental rights, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) (stating "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right"). Due to the severity and permanency of the termination of parental rights, the law imposes a heightened burden of proof, requiring clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002).

"Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.— Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a

reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

## II. Predicate Termination Grounds

The trial court found Father "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). "Endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A parent endangers a child when the environment creates a potential for danger and the parent knows of the danger but disregards it. *In re S.M.L.*, 171 S.W.3d at 477.

Termination of parental rights under subsection 161.001(b)(1)(E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill

effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re C.J.S.*, 383 S.W.3d 682, 688 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also In re J.O.A.*, 283 S.W.3d at 336 (holding endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *Id.* ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re J.O.A.*, 283 S.W.3d at 345. Illegal drug use may support termination under subsection 161.001(b)(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re E.R.W.*, 528 S.W.3d at 264-65.

Bruce Jeffries testified that Father's drug test results were "off the charts." The potential for overdose or death exposes a child to loss or injury that constitutes endangerment under subsection (E). Further, the evidence recounted above shows Father continued to use cocaine after Alex was removed from his care. Continued narcotic use after the child's removal is conduct that jeopardizes parental rights

and may be considered as establishing an endangering course of conduct. *In re S.K.A.*, 236 S.W.3d 875, 901 (Tex. App.—Texarkana 2007, pet. denied).

Because the record contains legally and factually sufficient evidence to support the trial court's finding under subsection (E), we need not address Father's arguments that the evidence is insufficient to support the trial court's findings under sections 161.001(b)(1)(D), (N), or (O). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). We overrule Father's first through third issues.

## III. Best Interest of the Child

Texas courts presume that keeping children with their natural parent serves the children's best interest. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Department carries the burden of rebutting that presumption. *Id.* Proof of acts or omissions under section 161.001(b)(1) is probative of the issue of the children's best interest. *See In re S.R.*, 452 S.W.3d at 366. The considerations the trier of fact may use to determine the best interest of the children, known as the *Holley* factors, include:

> (1) the desires of the child;
> (2) the present and future physical and emotional needs of the child;
> (3) the present and future emotional and physical danger to the child;
> (4) the parental abilities of the persons seeking custody;
> (5) the programs available to assist those persons seeking custody in promoting the best interest of the child;
> (6) the plans for the child by the individuals or agency seeking custody;
> (7) the stability of the home or proposed placement;
> (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parents' acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the children with a safe environment). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

### 1. The Future Emotional and Physical Danger to the Child

A parent's drug use supports a finding that termination is in the best interest of the child. *In re E.R.W.*, 528 S.W.3d at 266. The fact finder can give "great weight" to the "significant factor" of drug-related conduct. *Id*. The record is replete with evidence of Father's drug usage. Although there is some of evidence of diminished use, the fact finder could have reasonably concluded that Father's recovery was not reliably certain to continue. *See In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Evidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue.") Father's evidenced drug habits create a risk of instability and danger to Alex's future.

### 2. Child's Desires

When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for in the current placement, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because of Father's repeated positive drug tests, he was not permitted visitation with Alex. The only time Father has spent with Alex was in the first two months of Alex's life. On the other hand, Alex is being spoiled in his foster home by two parents who ensure he attends all

his pediatric visits and make time for him to visit his biological siblings.

### 3. *Stability of the Home or Proposed Placement*

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the children's best interest. *See In re E.R.W*, 528 S.W.3d at 267. Texas courts recognize as a paramount consideration in the best-interest determination the children's need for permanence through the establishment of a "stable, permanent home." *See In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.). There is no evidence that Father has established a permanent or stable residence. When the case began, Father was moving back and forth between a hotel room and his "homeboy's" house. No evidence was presented at trial indicating Father had improved his living circumstances. The Department's caseworker testified that Alex's foster parents intend to adopt him and give him a permanent home.

### 4. *The Present and Future Physical and Emotional Needs of the Child*

The Department's caseworker testified that Alex was meeting most of his developmental milestones but had not started crawling at the age of one. The foster parents were ensuring that Alex attended all his pediatric visits. Father and Mother admitted to a Department investigator that they had not taken Alex to a doctor since he was born. A fact finder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness to meet the child's needs in the future. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Given that Alex may be facing challenges in addressing his developmental delay, he needs parents that will ensure he regularly makes his doctors' visits. Father has not only failed to ensure Alex attended doctors' visits while in his care, Father has admittedly been unable to complete his service plan because he cannot make it to his own required appointments. *See In re O.R.F.*, 417

S.W.3d 24, 39-40 (Tex. App.—Texarkana 2013, pet. denied) (evidence demonstrated mother would be unable to meet the child's needs where mother had missed appointments for counseling, had experienced issues with transportation, and had a long history of drug abuse).

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of Father's parental rights is in the Alex's best interest. *See In re E.R.W.*, 528 S.W.3d at 267–68 (considering the mother's drug history and inability to provide a stable home in holding the evidence supported the best-interest finding).

Having concluded the evidence is legally and factually sufficient to support the trial court's finding terminating Father's parental rights under section 161.001(b)(1)(E) and that termination is in the Alex's best interest, we conclude that the record evidence supports the trial court's judgment.

We affirm the judgment of the trial court.


/s/　　Frances Bourliot
　　　　Justice


Panel consists of Justices Christopher, Bourliot, and Zimmerer.