283 S.W.3d 336 (2009)
In the Interest of J.O.A., T.J.A.M., T.J.M., and C.T.M., Children, Petitioners.
No. 08-0379.
Supreme Court of Texas.
Argued October 14, 2008.
Decided May 1, 2009.
*339 Trevor Allen Woodruff, Duke Elton Hooten, Michael C. Shulman, Texas Department of Family and Protective Services, Austin, TX, Larry L. Canada, Regional Attorney, Amarillo, TX, for Petitioner.
John Franklin McDonough III, Attorney at Law, Pampa, TX, Todd L. Alvey, Wheeler, TX, Landon Paul Lambert, Clarendon, TX, for Respondents.
Dale A. Rabe Jr., Bird, Bird & Rabe, Childress, TX, for person interested in case.
Danica Lynn Milios, James C. Ho, Office of the Solicitor General of Texas, Amicus Curiae.
DAVID M. MEDINA, Justice.
The Texas Family Code requires that a statement of points on which a party intends to appeal be presented to the trial court within fifteen days after the signing of a final order terminating parental rights. TEX. FAM.CODE § 263.405(b). The Code further provides that an appellate court is to consider only those issues presented to the trial court in a timely filed statement of points. Id. § 263.405(i). The issue in this parental rights termination case is whether the failure to follow these procedural rules in the Family Code precludes appellate review of an ineffective assistance of counsel claim.
Here, the indigent parents did not file a statement of points, but the court of appeals nevertheless reached the merits of the parents' ineffective assistance of counsel claim. 262 S.W.3d 7. We conclude, like the court of appeals, that an ineffective assistance of counsel claim can be raised on appeal despite the failure to include it in a statement of points. We also agree with the court of appeals that section 263.405(i) is unconstitutional as applied when it precludes a parent from raising a meritorious complaint about the insufficiency of the evidence supporting the termination order.
The court of appeals reversed the parental termination order in part, concluding that the evidence was both legally and factually insufficient to terminate the parental rights of the father in this case, and *340 remanded the case to the trial court for further proceedings on the issue of custody. Although we disagree that the evidence was legally insufficient to support the termination of the father's parental rights, we agree that the cause must be remanded and accordingly modify the court of appeals' judgment to remand the cause for a new trial on the issue of the father's parental rights.

I
This case concerns the parental rights of Timothy and Trena M. The parents have three children: T.J.A.M., born in 1996, and twins, T.J.M. and C.T.M., born in 2005.[1] At the time of the twins' premature birth, Trena and the twins tested positive for cocaine. Trena also tested positive for barbiturates. Timothy and Trena have separated several times, including during some of the pregnancy, but reconciled before the twins' birth.
Learning of Trena's drug use, the Department of Family and Protective Services ("Department") intervened, removing the twins from their parents' custody and placing them with foster parents. The older child, T.J.A.M., was placed with her maternal grandmother where she had lived while Trena was previously incarcerated. The trial court appointed the Department temporary sole managing conservator of the children, and the Department implemented a Family Service Plan to improve Timothy's and Trena's parenting skills and reunify the family.
The plan, however, failed, and the case proceeded to a bench trial that resulted in the involuntary termination of the parents' parental rights to the twins, and the appointment of the Department as managing conservator. The trial court did not terminate parental rights to the couple's oldest child, T.J.A.M, but appointed Trena's mother as managing conservator. The trial court's final order was signed February 16, 2007.
Five days later, on February 21st, Trena's trial counsel filed a notice of appeal and a motion to withdraw. Timothy's trial counsel did the same on February 22nd. Although the trial court never ruled on the motions to withdraw, it did subsequently appoint appellate counsel for Timothy and Trena but too late for either to meet the Family Code's fifteen-day deadline for filing a statement of points. TEX. FAM.CODE § 263.405(b).
Even though they had not filed a statement of points, the parents appealed the trial court's termination and custody order, challenging the sufficiency of the evidence, the ineffectiveness of their trial counsel, and the constitutionality of section 263.405. The court of appeals concluded that Timothy's and Trena's trial counsel were both ineffective for failing to file a statement of points but that the failure ultimately deprived only Timothy of due process. 262 S.W.3d at 19-24. The court accordingly affirmed the termination order as to Trena, but reversed as to Timothy, concluding that the evidence was legally and factually insufficient to support the termination of his parental rights to the twins. The court of appeals remanded the issue of Timothy's custody rights to the twins for further proceedings, affirming the remainder of the trial court's order. Id. at 24-25. Only the Department perfected an appeal to this Court.

*341 II
The Family Code provides that in parental termination cases a statement of points, detailing what the party intends to appeal, must be filed with the trial court within fifteen days of the termination order.[2] This statement may be combined with a motion for new trial. TEX. FAM.CODE § 263.405(b). The trial court must hold a hearing within thirty days of the termination order to consider any motion for new trial or issue of indigence. Id. § 263.405(d). The Family Code bars an appellate court from considering any issue not presented to the trial court in a timely filed statement of points. Id. § 263.405(i).
The Department complains that the court of appeals should not have reviewed the termination order in this case because neither Timothy nor Trena filed a statement of points in the trial court as the Family Code requires. Despite this alleged error, the Department prevailed in the court of appeals as to Trena; the court affirmed termination of her parental rights to the twins, and she has not filed a petition for review. Thus, the court of appeals' judgment affirming the termination of Trena's parental rights is final, and only Timothy's parental rights to the twins remain at issue here.
The Department does not squarely address the constitutional concerns raised in the court of appeals. Instead, the Department submits that the right to appeal a termination order is a statutory right, not a constitutional one, and that the Legislature clearly has the power to restrict, limit, or even deny that right. The Department further submits that the procedural requirements of the statute here are clear and unambiguous, providing for no exceptions. The Department concedes, as it must,[3] that indigent parents are entitled to counsel but argues that counsel need not be competent because the procedural scheme makes no provision for incompetence. The argument ignores our holding in In re M.S. "that the statutory right to counsel in parental-rights termination cases embodies the right to effective counsel." 115 S.W.3d 534, 544 (Tex.2003). In fact, the Department generally ignores our decision in this case altogether.
In M.S., the indigent parent complained that her attorney failed to provide competent representation in violation of her due process rights. Id. at 543. Specifically, the parent argued, as in this case, that her attorney was ineffective for not following the appropriate procedure to preserve her complaint regarding the factual sufficiency of the evidence. Id. at 543-44, 546. After recognizing the indigent parent's right to competent counsel, we turned to the question of what constitutes ineffective assistance. In answering that question, we followed the two-pronged analysis of the United States Supreme Court in Strickland v. Washington, 466 *342 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
In re M.S., 115 S.W.3d. at 545. Thus, an ineffective assistance of counsel claim requires a showing of a deficient performance by counsel so serious as to deny the defendant a fair and reliable trial.
We further concluded in M.S. that due process considerations should control our review of a rule governing preservation of a factual sufficiency complaint in parental rights termination cases. Id. at 547. Although we recognized that a right of appeal might not be constitutionally required, once granted, the right could not be unreasonably withdrawn. Id. (quoting M.L.B. v. S.L.J., 519 U.S. 102, 111, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) ("once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts")). And, because error preservation in the trial court is the "threshold to appellate review," we concluded that it should be reviewed under the procedural due process analysis established by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In re M.S., 115 S.W.3d at 547.
Under the Eldridge analysis, a court must "weigh three factorsthe private interests at stake, the government's interest in the proceeding, and the risk of erroneous deprivation of parental rightsand balance the net result against the presumption that our procedural rule comports with constitutional due process requirements." Id. (footnote omitted). When weighing these factors in M.S., we concluded that "the parent's fundamental liberty interest in maintaining custody and control of his or her child, the risk of permanent loss of the parent-child relationship, and the parent's and child's interest in a just and accurate decision" weighed heavily in favor of permitting appellate review of the sufficiency of the evidence despite counsel's unjustifiable failure to preserve error. Id. at 548. We likewise noted the State's fundamental interest in protecting the child's best interests, interests that are not antagonistic to those aforementioned. Id. We also noted the associated interests of the State and the child in an efficient and speedy resolution of the matter so as not to compound harm to the child through inaction or delay, but concluded that the State's interests in economy and efficiency paled in comparison to the private interests at stake. Id.
We concluded that the State, the parent, and the child shared an interest in an expeditious and final decision but that the State's interest in protecting the child's welfare must begin "by working toward preserving the familial bond, rather than severing it." Id. (citing Santosky v. Kramer, 455 U.S. 745, 766-67, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). We said that "[o]nce it is clear that the parent cannot or will not provide a safe, stable family environment, then the State's interest in protecting the welfare of the child shifts to establishing that safe, stable, and permanent environment for the child elsewhere." In re M.S., 115 S.W.3d at 548-49 (citing Santosky, 455 U.S. at 767, 102 S.Ct. 1388). Thus, we concluded that the State's goal of ensuring the child's safety and *343 stability was served by procedures promoting an accurate determination of whether the natural parent could provide a normal home and disserved by procedures that did not. In re M.S., 115 S.W.3d at 549.
Finally, we concluded that the fundamental liberty interests at issue were too dear and the risk of erroneous deprivation too significant to countenance the waiver of a parent's appellate rights through procedural neglect under these circumstances. Instead, we held that "if counsel's failure to preserve a factual sufficiency complaint is unjustified, then counsel's incompetency in failing to preserve the complaint raises the risk of erroneous deprivation too high, and our procedural rule governing factual sufficiency preservation must give way to constitutional due process considerations." Id. Although the procedural preservation rule at issue in M.S. was a civil court-made rule requiring a motion for new trial as a predicate for appellate review of a factual sufficiency issue, and the procedural rule here is a statute to the same effect, the due process clause applies equally to both situations. U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19.
We cautioned in M.S., however, that not every failure to preserve factual sufficiency issues would rise to the level of ineffective assistance. In re M.S., 115 S.W.3d at 549. The presumption is that "`counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's decision not to challenge factual sufficiency was based on strategy, or even because counsel, in his professional opinion, believed the evidence factually sufficient such that a motion for new trial was not warranted." Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). The parent's burden is to show that "`counsel's performance fell below an objective standard of reasonableness.'" In re M.S., 115 S.W.3d at 549 (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001)); Thompson v. State, 9 S.W.3d 808, 812-13 (Tex.Crim.App.1999). We agree with the court of appeals that Timothy met that burden here.
The failure of Timothy's trial counsel to file a statement of points on his behalf was neither strategic nor a concession to any lack of perceived merit. His trial counsel filed a notice of appeal, but did so simultaneously with his motion to withdraw and did nothing further. There the matter rested until the trial court appointed appellate counsel some days after the statement was due. Timothy was still represented by his trial counsel when the fifteen-day deadline to file the statement of points passed. TEX.R. CIV. P. 10. Trial counsel's failure to follow through with his representation until relieved of that duty was tantamount to abandoning his client at a critical stage of the proceeding. See Rogers v. Clinton, 794 S.W.2d 9, 10 n. 1 (Tex.1990) (stating attorney must satisfy the requirements of Rule 10 of the Texas Rules of Civil Procedure to withdraw). We accordingly agree with the court of appeals that Timothy was entitled to effective assistance of counsel through the deadline date for filing a statement of points and that trial counsel's performance during this period was seriously deficient.
Part of the problem here may be resolved by better communication between trial court and counsel. Often in these cases, there is a transition from trial to appellate counsel after rendition. Because of the accelerated appellate timetable and the critical fifteen-day deadline for the statement of points, and because trial and appellate counsel are often different people, there can be misunderstandings as to which attorney is responsible for filing a motion for new trial, a statement of points on appeal, and a notice of appeal.
*344 Given the accelerated timetable, the burden should logically fall on trial counsel, and in this case necessarily so because Timothy's appellate counsel was not appointed until after the fifteen-day period had run. See, e.g., In re H.R., 87 S.W.3d 691, 703 (Tex.App.-San Antonio 2002, no pet.) (concluding that practical effect of accelerated appellate timetable is to burden trial counsel with responsibility of preserving client's appellate rights). As one court of appeals has noted, the fifteen-day deadline is a trap for the unwary. In re R.J.S., 219 S.W.3d 623, 627 (Tex.App.-Dallas 2007, pet. denied). That court of appeals has further suggested that trial courts should alert parents to the requirements of section 263.405 at the end of the final order terminating parental rights. Id. We agree and suggest further that the best way to avoid ineffective assistance of counsel claims in the future is for the trial courts to take a proactive approach, assuring that indigent parents do not inadvertently waive their appellate rights under the Family Code. Because of the accelerated nature of these cases, trial courts must act expeditiously when appointing new counsel for the appeal.

III
An ineffective assistance of counsel claim, however, requires more than merely showing that appointed counsel was ineffective. There are two elements to the Strickland standard, and, under the second, the defendant must show that counsel's "deficient performance prejudiced the defense ... that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The court of appeals concluded that the second element had been met in this case because, but for counsel's unprofessional error, the result of the proceeding would have been different; specifically, had counsel properly preserved error by filing the statement of points, the court of appeals would have reversed the termination order because the evidence was insufficient to support the relevant grounds for termination of Timothy's parental rights. 262 S.W.3d at 19, 24.
Proceedings to terminate parental rights under the Family Code require proof by clear and convincing evidence. TEX. FAM.CODE § 161.001(1). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Id. § 101.007; In re J.F.C., 96 S.W.3d 256, 264 (Tex.2002). When the legal sufficiency of the evidence is challenged:
[A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter *345 that must be proven is true, then that court must conclude that the evidence is legally insufficient.
In re J.F.C., 96 S.W.3d at 266.
When the factual sufficiency of the evidence is challenged, only then is disputed or conflicting evidence under review. As we said in J.F.C.: "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." Id. The court of appeals should further explain in its opinion "why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding." Id. at 267.
The court of appeals here found the evidence to be both legally and factually insufficient to support the trial court's grounds for terminating Timothy's parental rights. Those grounds included the trial court's determination that Timothy had (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children. TEX. FAM.CODE § 161.001(1)(D), (E). The court of appeals concluded that there was no evidence to support the first ground because the twins had been removed from Timothy at birth. 262 S.W.3d at 24. The twins had therefore always been in "`conditions or surroundings' dictated by the Department, not Timothy." Id.
As to the second ground, the court concluded that while there was evidence calling Timothy's parenting skills into question recent improvements in Timothy's parenting skills, life choices, and living situation prevented a reasonable factfinder from forming a firm belief or conviction that Timothy engaged in conduct exposing the twins to loss or injury or to emotional or physical jeopardy. See id. ("insufficient evidence of Timothy's continued drug use, subsequent incarceration, or other anti-social behavior" prevented firm conviction of endangerment). The court noted, however, that a child need not suffer actual injury to have been endangered and that a parent's drug use and its effects might establish an endangering course of conduct. Id.
We have previously said that endangering conduct is not limited to actions directed towards the child. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987). It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage. See id. (stating that although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury); see also In re M.N.G., 147 S.W.3d 521, 536 (Tex.App.-Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). We accordingly agree that a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct.[4]
*346 Timothy admitted to daily marijuana use before the twins were born, although he testified that he never used drugs in his older daughter's presence. Timothy and Trena also had a history of domestic violence. Timothy's mother testified that there had been two or three incidents of domestic violence. Trena's drug use was the cause of many of the problems in the marriage. Timothy testified about forcing Trena to leave their home "quite a few times" because of her drug use. On the majority of these occasions, he permitted Trena to leave with their daughter although he presumably knew this was not in their daughter's best interests.
After the removal of the children, Timothy was allowed supervised visitation and was given a copy of his service plan. Part of the service plan required Timothy to submit to drug tests, two of which he missed. A few months after the twins were removed, Timothy was incarcerated on domestic violence charges, filed by Trena in 2004, which she later recanted. Upon his release from jail, Timothy was advised to attend parenting classes and take a drug screening test. He did not complete the drug screen and subsequently moved to California where he attended a substance abuse program and parenting classes. After returning to Texas, Timothy obtained steady employment, improved housing, and reliable transportation for his children. He also attended parenting classes, exercised regular visitation, and passed three successive drug tests. However, Timothy testified that he tested positive for marijuana shortly before the final hearing commenced in this case. He also remained delinquent in his child support.
Focusing on Timothy's positive improvement as a parent, the court of appeals concluded that the evidence was both "legally and factually insufficient to support the predicate finding of conduct endangering the children." 262 S.W.3d at 24. We disagree regarding the legal sufficiency of the evidence. While the recent improvements made by Timothy are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices. Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder, not the appellate court, is the sole arbiter of the witnesses' credibility and demeanor, we conclude that there was some evidence of endangerment on which a reasonable factfinder could have formed a firm belief or conviction of endangerment. TEX. FAM.CODE § 161.001(1)(E); In re J.F.C., 96 S.W.3d at 266.
The court of appeals' analysis here instead suggests a comparison of Timothy's conduct over time, attributing greater weight to his recent improvements and less to his past challenges. While we do not question the court's logic, we do reject its use here as part of the legal sufficiency review. See In re L.M.I., 119 S.W.3d 707, 712 (Tex.2003) ("Even under the standard we articulated in In re J.F.C., this reweighing of the evidence is improper."). *347 Weighing conflicting evidence and inferences to determine whether a verdict should be vacated as manifestly unjust is appropriately a part only of the reviewing court's factual sufficiency review, a matter committed under the Texas Constitution to the courts of appeals and not to this Court. TEX. CONST. art. V, § 6.

* * *
In sum, we agree that Timothy's ineffective assistance of counsel claim raises due process concerns and that section 263.405(i) of the Family Code is unconstitutional to the extent it prevents a court from considering those claims. We do not agree with the court of appeals, however, that there was no clear and convincing evidence to support termination of Timothy's parental rights on the ground of endangerment. But even though the court of appeals found no evidence to support this ground, it nevertheless remanded the cause to the trial court for further proceedings on the issue of custody. Because a remand is also the appropriate judgment when evidence is found to have been factually insufficient, we modify the court's judgment to remand the cause to the trial court for a new trial on the issue of Timothy's parental rights.
Justice WILLETT filed a concurring opinion.
Justice WILLETT, concurring.
I join the Court's opinion but write separately to stress steps that trial courts can take to thwart the sort of procedural gamesmanship that worries the Texas Department of Family and Protective Services (DFPS). To recap, DFPS fears that any deviation from the hard-and-fast rule that arguments not found in the statement of points are waived will entice counsel to deliberately disregard error-preservation requirements in order to seize tactical advantage. That is, calculating counsel might believe it's effective assistance to argue ineffective assistance, deliberately failing to file the required statement of points in order to strengthen their clients' positions on appeal. This is obviously a high-risk contrivance, for clients and counsel alike: (1) risky for clients because the appellate court may balk and instead impute counsel's failures to the parent, whose appellate rights are then waived; (2) risky for counsel because they may jeopardize their professional reputations, future court appointments, and/or face malpractice claims or disciplinary actions.
I agree with the Solicitor General of Texas, who in an amicus curiae brief filed at the Court's invitation, states: "[O]bjectively unreasonable failures by counsel to preserve a client's appellate rights warrant opprobrium when the failures are inadvertentand even more so when the failures are deliberate." While the risk of such manipulation may be low, it's worth guarding against, and trial courts can curb such opportunism any number of ways, including:
 Being more proactive in the post-judgment process.

Trial courts, after issuing an order terminating parental rights, can also issue unambiguous instructions that set forth the steps parents and attorneys must take to preserve their appellate rights and the attendant risks if they fail to do so.
 Specifically reminding trial counsel that while the trial may have ended, their duties have not.

Failing to adequately preserve appellate rights by timely filing a statement of points could constitute a breach of fiduciary duty to the client that spawns both malpractice claims and disciplinary actions.

*348  Referring such cases to appropriate disciplinary authorities.

If suspicious of subterfuge or incompetence, trial courts should make clear that such actions will trigger unpleasant consequences.
I trust that if trial courts are vigilant, making clear that intentional evasion of appellate requirements will not be tolerated, much less rewarded, such gamesmanship will be rare. Better still, this: "Suddenly, as rare things will, it vanished."[1]
NOTES
[1] When this case began, the parental rights to a fourth child, J.O.A., were at issue. J.O.A. is Trena's child from a previous relationship and has lived with his maternal grandmother since the age of four. The trial court did not terminate Trena's parental rights to J.O.A. but appointed the child's maternal grandmother permanent managing conservator. J.O.A., who was born in 1989, is now an adult.
[2] Section 263.405(b) of the Family Code was amended in 2007, after the commencement of this parental termination proceeding. The amendment made no apparent substantive change to the statement of points requirement. The former provision, applicable here, provided:

Not later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on which the party intends to appeal. The statement may be combined with a motion for new trial.
Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 9, 2001 Tex. Gen. Laws 2397 (amended 2007) (current version at TEX. FAM.CODE § 263.405(b)).
[3] Texas Family Code section 107.013(a)(1) guarantees indigent persons a right to counsel in government initiated parental rights termination cases.
[4] In re S.N., 272 S.W.3d 45, 52 (Tex.App.-Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."); Toliver v. Tex. Dep't of Family and Protective Servs., 217 S.W.3d 85, 98 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("Evidence of narcotics use and its effect on a parent's life and her ability to parent may establish that the parent has engaged in an `endangering course of conduct.'"); In re R.W., 129 S.W.3d 732, 739 (Tex.App.-Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct.") (citation omitted).
[1] Robert Browning, One Word More, st. 4 (1855).