

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00325-CV

**IN THE INTEREST OF M.J.V.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00861
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:      Sandee Bryan Marion, Chief Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice

Delivered and Filed: August 28, 2019

AFFIRMED

D.C. appeals the trial court's order terminating her parental rights to M.J.V. The sole issue raised on appeal is whether trial counsel rendered ineffective assistance of counsel. We affirm the trial court's order.

### BACKGROUND

On April 24, 2018, the Texas Department of Family and Protective Services filed a petition to terminate D.C.'s parental rights to M.J.V. On April 23, 2019, a bench trial was held. At the time of the trial, M.J.V. was almost four years old.

At the commencement of trial, D.C.'s trial attorney announced ready to proceed. The Department's caseworker, who was the only witness called to testify at trial, testified M.J.V. was removed from D.C.'s care because of her drug use. On June 11, 2018, D.C. signed a copy of her

service plan. The caseworker testified D.C. was not in compliance with the service plan because she: (1) had not completed a drug assessment, therapy, an evaluation, domestic violence classes, or parenting classes; (2) continued to test positive for methamphetamines; (3) refused to allow the caseworker into the home where she was living; and (4) failed to provide documentation showing she had stable employment. D.C. admitted to using drugs throughout the pendency of the case and tested positive for methamphetamines the Thursday before trial when she gave birth to twins. The caseworker explained D.C. was tested in October of 2018 and February of 2019 while D.C. was pregnant. The caseworker also explained she had attempted to visit the home where D.C. was living two times in March of 2019 and two times in April of 2019, but no one answered the door. As a result, the caseworker could not determine whether D.C. could provide M.J.V. with a safe and stable home environment. Furthermore, D.C. was living with her brother who also had a case pending with the Department in which his children were removed due to drug use. The caseworker further explained D.C. was referred more than once for individual therapy and was discharged from therapy due to "no-shows." The caseworker further testified D.C. appeared to be under the influence of drugs when she attended her visitations with M.J.V. because she exhibited slurred speech and appeared sleepy and inattentive.

When D.C.'s attorney cross-examined the caseworker, she asked the caseworker when the Department's goal changed to terminating D.C.'s parental rights, and the caseworker responded the goal changed in March of 2019. After the caseworker's response, the following exchange occurred between the trial court and D.C.'s attorney:

> [D.C.'s attorney]: Your Honor, at this time, I'm going to change my ready answer to not ready, because I spoke with [the Department's supervisor] last week and she told me that this was not a termination case.
> THE COURT: Well —
> [D.C.'s attorney]: And I had asked that, because my client was unable to get in touch with the worker, I was going to ask that the case be reset to another time.

And she said we didn't need to do that because this was going to be a non-termination case.

THE COURT: I don't know anything about that. I do know this, that I had a hearing on 1/29/19. And my notes and the record indicate that the permanency goal is articulated as termination. That was on 1/29/19.

[D.C.'s attorney]: I understand that, but this is news to me. I didn't prepare for this case today, because I was told this was a non-termination case. They have changed their goal.

THE COURT: I don't know.

[D.C.'s attorney]: So I —

THE COURT: I understand the argument. I'm going to have to deny it, though. We've got a dismissal of 4/29/19. I had a trial setting on 1/29/19, and that goal was articulated as termination.

[D.C.'s attorney]: Yes, Your Honor. I understand that.

After that exchange, all parties rested.

In closing arguments, the Department's attorney requested that D.C.'s parental rights be terminated. The Department's attorney stated the first trial setting in the cause was January 29, 2019. On that date, the trial court gave D.C. additional time to complete services, but she still had not engaged. M.J.V.'s attorney ad litem agreed with the Department's recommendation, noting M.J.V. had been placed with his father since January and was transitioning well. The father's attorney also agreed with the recommendation. D.C.'s attorney stated that other than changing her announcement to not ready, she waived closing.

The trial court noted the case was less than a week away from the one year dismissal, and one reset had already been granted. The trial court terminated D.C.'s parental rights and appointed M.J.V.'s father as M.J.V.'s managing conservator.[1]

---

[1] D.C.'s parental rights were terminated on the following four grounds: (1) engaged in conduct or knowingly placed M.J.V. with persons who engaged in conduct which endangered M.J.V.'s physical or emotional well-being; (2) constructively abandoned M.J.V. who had been in the permanent or temporary managing conservatorship of the Department for not less than six months and: (a) the Department made reasonable efforts to return M.J.V. to D.C.; (b) D.C. has not regularly visited or maintained significant contact with M.J.V.; and (c) D.C. has demonstrated an inability to provide M.J.V. with a safe environment; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for D.C. to obtain the return of M.J.V. who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of M.J.V.'s removal from D.C. for abuse or neglect; and (4) used a controlled substance in a manner that endangered M.J.V. and: (a) failed to complete

## BURDEN TO ESTABLISH INEFFECTIVE ASSISTANCE OF COUNSEL

As previously noted, the sole issue presented on appeal is whether D.C.'s trial attorney rendered ineffective assistance of counsel.

As an indigent parent in a parental termination case, D.C. was entitled to appointed counsel which "embodies the right to effective counsel." *In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010) (internal quotation omitted). The Texas Supreme Court has adopted the two-pronged test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), to analyze ineffective assistance claims in parental termination cases. *In re J.O.A.*, 283 S.W.3d 336, 341-42 (Tex. 2009). Under that test, D.C. was required to show: (1) her counsel's performance was deficient; and (2) the deficient performance prejudiced her defense. *Id*. (quoting *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003)). In order to establish prejudice under the second prong, D.C. was required to show a reasonable probability existed that, but for counsel's deficient performance, the outcome of the proceeding would be different. *In re M.S.*, 115 S.W.3d at 549-550.

In applying the *Strickland* test, "we must give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006) (internal quotation omitted). "When the record is silent concerning the reasons for trial counsel's actions, an appellate court does not engage in speculation to find ineffective assistance of counsel." *In re J.C.R.*, No. 04-18-00949-CV, 2019 WL 2110109, at *6 (Tex. App.—San Antonio May 15, 2019, pet. denied) (mem. op.). "Accordingly, ineffective

a court-ordered substance abuse treatment program; or (b) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance.

assistance claims must be firmly found in the record, and the record must affirmatively show the alleged ineffectiveness." *Id*.

D.C. asserts the following two bases upon which her trial attorney rendered ineffective assistance: (1) failure to prepare for trial; and (2) failure to file a motion for new trial asserting her ineffectiveness as a basis for a new trial. We first address trial counsel's failure to file a motion for new trial.

### FAILURE TO FILE MOTION FOR NEW TRIAL

"'[W]hen a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected.'" *In re M.S.*, 115 S.W.3d at 549. "In this case, the record contains no evidence to show [trial] counsel did not discuss the merits of a motion for new trial with [D.C.]." *In re J.A.R.*, No. 04-18-00646-CV, 2019 WL 451731, at *2 (Tex. App.—San Antonio Feb. 6, 2019, pet. denied) (mem. op.). We also note D.C. does not raise any issues in her brief challenging the sufficiency of the evidence to support the trial court's findings. *In re T.L.P.*, No. 09-13-00220-CV, 2013 WL 5874630, at *2 (Tex. App.—Beaumont Oct. 31, 2013, no pet.) (noting "we presume that trial counsel believed that filing a motion for new trial was not warranted because the evidence supporting Mother's termination was sufficient"). Accordingly, we overrule D.C.'s contention that trial counsel was ineffective in failing to file a motion for new trial.

### FAILURE TO PREPARE FOR TRIAL

D.C. next contends trial counsel was ineffective in failing to prepare for trial, noting her trial attorney admitted on the record that she was not prepared. D.C. also asserts "[a]fter the trial court denied her attempt to change her announcement to 'not ready' . . ., it was ineffective for trial counsel not to cross examine the State's only witness." D.C. further contends "trial counsel raised but a single evidentiary objection to only one of the questions put to the opposing witness."

Finally, D.C. contends trial counsel "called no witnesses of her own" and "waived closing argument."

By her own admission, trial counsel's performance was deficient in failing to prepare for trial. In order to establish trial counsel rendered ineffective assistance, however, D.C. is also required to show she was prejudiced by the deficient performance by showing a reasonable probability existed that the outcome of the proceeding would have been different but for counsel's deficient performance. *In re M.S.*, 115 S.W.3d at 549-50. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In her brief, D.C. asserts if trial counsel had been prepared and called her as a witness "there was a reasonable probability that the State might not have been able to prove that termination of her parental rights was in the child's best interests." D.C. does not, however, point to any specific evidence or testimony she could have produced or provided to contradict the Department's witness. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (holding appellant failed to demonstrate counsel's performance prejudiced her defense because she failed to point "to any specific evidence she could have produced to contradict TDPRS's witnesses if her attorney had been given additional time to prepare"). She also does not suggest any additional questions her trial counsel could have asked or any additional objections or closing arguments she could have made that would have had a reasonable probability of changing the outcome of the proceeding. Based on the evidence, the trial court could have found D.C. continued to use methamphetamines throughout the pendency of the case even while pregnant with twins and before her visits with M.J.V. The trial court also could have found D.C. did not demonstrate an ability to provide a safe, stable environment for M.J.V. and made no effort to complete the actions necessary to obtain M.J.V.'s return. Accordingly, we overrule D.C.'s contention that trial counsel rendered ineffective assistance of counsel in failing to prepare for trial. *See In re A.Y.C.*, No. 04-18-00016-CV, 2018

WL 2694761, at *5 (Tex. App.—San Antonio June 6, 2018, pet. denied) (mem. op.) (holding appellant failed to sustain burden to show prejudice when he did "not explain, given the evidence, how the outcome might have been different if his counsel had reurged a motion for continuance or asked additional questions"); *In re F.L.H. IV*, No. 04-17-00425-CV, 2017 WL 6597829, at *15 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied) (mem. op.) (holding appellant failed to show the result of the proceeding would have been different by offering any explanation of "how the trial court's determination regarding her parental rights would have changed"); *cf. In re L.M.*, No. 02-17-00421-CV, 2018 WL 2054988, at *12 (Tex. App.—Fort Worth May 3, 2018, no pet.) (mem. op.) ("A continuance or extension would not have reduced the evidence supporting the endangerment and best-interest findings unchallenged by Father on appeal, especially the damning evidence that Father endangered the twins by supplying Mother with methamphetamine when he knew she was pregnant and that he continued to endanger them and subject them to a life of instability by using drugs during the pendency of the case.").

## CONCLUSION

Because D.C. has not met her burden of establishing the outcome of the proceeding would have been different but for her trial counsel's deficient performance, the trial court's order is affirmed.

Sandee Bryan Marion, Chief Justice