

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00249-CV

**IN THE INTEREST OF C.W.**

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA02259
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: April 29, 2020

AFFIRMED

On September 19, 2018, this court issued an opinion and judgment affirming the trial court's order terminating Appellant Mother Ana's parental rights.[1] *See In re C.W.*, 594 S.W.3d 360 (Tex. App.—San Antonio 2018), *aff'd in part, rev'd in part*, 586 S.W.3d 405 (Tex. 2019). The trial court had terminated Ana's parental rights based on multiple grounds found in the Texas Family Code: section 161.003(a) (mental illness or deficiency), section 161.001(b)(1)(D) (dangerous surroundings or conditions), section 161.001(b)(1)(N) (constructive abandonment), and section 161.001(b)(1)(O) (failure to comply with a court-ordered plan for return of the child). *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (N), (O), 161.003(a). The trial court also found

---

[1] To protect the identity of the minor children, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

that termination was in the child's best interest. *See id*. §§ 161.001(b)(2), 161.003(a)(5). On appeal in this court, Ana argued that none of the above findings made by the trial court were supported by legally and factually sufficient evidence. Because only one statutory ground is necessary to support a judgment terminating parental rights when there is also a finding that termination is in the child's best interest, *see In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003), this court reached only two of Ana's issues: (1) whether the evidence was legally and factually sufficient to support the trial court's best-interest finding, and (2) whether the evidence was legally and factually sufficient to support the trial court's finding pursuant to subsection (O) that Ana failed to comply with her court-ordered service plan. *See In re C.W.*, 594 S.W.3d 362-64. This court held that there was legally and factually sufficient evidence to support both the trial court's best-interest finding and the trial court's finding pursuant to subsection (O). *See id*. at 362. On October 29, 2018, Ana filed a petition for review in the supreme court, asserting that this court erred in (1) upholding the trial court's finding that termination was in the child's best interest; and (2) failing to address her subsection (D) issue. *See In re C.W.*, 586 S.W.3d at 406.

On May 17, 2019, the supreme court held in *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019), that "even when another ground is sufficient for termination, because of the potential consequences for parental rights to a different child," if a parent presents issues on appeal relating to the trial court's findings pursuant to subsections (D) and (E), an appellate court must address those issues. Then, on October 18, 2019, the supreme court issued an opinion in the instant appeal. *See In re C.W.*, 586 S.W.3d at 405-06. Because the trial court's subsection (D) finding could affect Ana's "parental rights to other children under section 161.001(b)(1)(M)," the supreme court held this court erred in failing to address Ana's "challenge to the section 161.001(b)(1)(D) finding." *Id.* at 407. With regard to the other issue brought in the supreme court by Ana, whether this court erred in upholding the trial court's best-interest finding, the supreme court stated this court had

"thoroughly detailed and analyzed the evidence," and agreed "the evidence was legally sufficient to uphold that termination of the mother's rights was in the child's best interest." *Id*. Accordingly, the supreme court affirmed in part and reversed in part our judgment and remanded the case to this court to consider Ana's challenge to the trial court's subsection (D) finding. *See id*.

We note that (1) because Ana did not challenge in the supreme court this court's holding that sufficient evidence supported the trial court's finding pursuant to subsection (O), and (2) because the supreme court has upheld our determination that the evidence was sufficient to support the trial court's best-interest finding, the trial court's order terminating her parental rights must be affirmed. *See In re N.G.*, 577 S.W.3d at 232 ("To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground."). Thus, we need consider only whether the trial court's finding pursuant to subsection (D) should be stricken from the order.

### ENDANGERMENT PURSUANT TO SUBSECTION (D)

Subsection (D) allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child." *Id*. "For example, abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child." *Id*. "Parental and

caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *Id.* "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.) (mem. op.) (quoting *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). "[A] parent need not know for certain that the child is in an endangering environment, awareness of such a potential is sufficient." *Id.* (quoting *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.)). "In evaluating endangerment under subsection D, we consider the child's environment *before* the Department obtained custody of the child." *Id.* at *3 (emphasis added) (citation omitted).

On appeal, Ana argued that the trial court's finding pursuant to subsection (D) was not supported by legally and factually sufficient evidence. In reviewing the legal sufficiency of the evidence to support the trial court's best-interest finding, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the trial court is the sole judge of the weight and credibility of the evidence. *Id.*

### *Evidence of Endangerment*

In late September 2017, the Department received information alleging that Ana was prostituting her fourteen-year-old daughter, C.W., and that they were homeless. At the time the

Department received this referral, C.W. had been reported missing; she was not found until November 2, 2017. Robert Rangel, the Department's caseworker, testified that C.W. was removed from Ana's care because of safety concerns. The Department was able to identify C.W.'s father and eventually communicate with him by phone. The father indicated he had no relationship with C.W. and had not seen her for eight years. During the pendency of the case, he made no attempts to become involved in C.W.'s life and had no contact with her. As for Ana, Rangel testified that at the time of trial, the Department was concerned about Ana's mental health status, her inability to provide safe and stable housing, and her inability to provide a safe environment for C.W. According to Rangel, through therapeutic services, C.W. was able to explain that she did not want to live with her mother and wished instead to remain in the foster home where she had been placed. Rangel testified C.W. was doing well in school and had a good bond and attachment with her caregivers. Similarly, the ICU worker[2] testified that C.W. was relaxed and comfortable with her caregivers, that she was bonded and attached to them, and that she wished to remain under their care until she reached the age of majority. The ICU worker testified that the caregivers were also attached and bonded with C.W. and expressed their wish for C.W. to remain with them.

Although C.W. did not fully disclose to Rangel the extent to which C.W. would engage in "friendships" with older males to help her mother, Rangel was able to testify about the lack of stable housing and exposure to domestic violence that C.W. had endured under Ana's care. Rangel testified that while living in Mesquite, Texas, Ana and C.W. had been evicted from an apartment and were homeless for a while. They then lived in a homeless shelter but were "kicked out" because of a fight between C.W. and Ana's paramour. After relocating to San Antonio, they lived on the streets for approximately two months. They eventually sought shelter at Haven for Hope but were

---

[2] Although not expressly stated, the record indicates that the ICU worker is a social worker.

not allowed to stay because of the violent history between C.W. and Ana's paramour. Ana could have chosen to separate from her paramour so that she and C.W. could seek shelter at Haven for Hope, but she refused. By choosing to stay with a paramour who had violent interactions with C.W., Ana showed an inability to be protective of C.W. Ana knowingly remained in a situation that would continue to endanger C.W. and that precluded Ana and C.W. from obtaining shelter. Indeed, the history of Ana's relationships showed that she would choose a paramour over C.W., which had a detrimental emotional impact on her daughter. Rangel testified that after C.W. came into the Department's care, Ana moved to Houston where she continued to be homeless. As of the trial date, Rangel did not believe Ana had ever established a safe environment appropriate for her child. According to Rangel, Ana was never able to provide documentation verifying she had complied with her plan of service, which included the following: seeing a psychiatrist; following through with a mental health evaluation and treatment; and completing NAMI classes, parenting classes and individual counseling. Rangel testified that Ana posed a threat to her child if C.W. were to be returned to her. According to Rangel, Ana had pressured C.W. during the pendency of this case to tell the judge that C.W. wanted to return to Ana's care. C.W., however, informed Rangel that she did not want to live with her mother. Rangel testified because of this pressure Ana had placed on C.W., C.W. had suffered a recent "breakdown" and had begun acting out with her caregivers.

Rangel testified that by failing to complete her service plan and by continuing to make poor choices throughout the pendency of the case, Ana and C.W.'s relationship had become "toxic." Rangel did not believe that Ana was able to make rational decisions on behalf of her child, be protective of her, or provide her a safe and stable environment.

In arguing that the evidence is legally and factually insufficient to support the trial court's finding under subsection (D), Ana merely points to the fact that she is no longer with her paramour.

The trial court, however, could have concluded from all the evidence that Ana had a history of choosing her paramours over her children, that there was evidence C.W. had to engage in "friendships" with men due to her mother's insistence, that Ana would not be protective of C.W. in the future based on her past choices, and that Ana was incapable of providing C.W. with a safe and stable environment. *See In re J.T.G.*, 121 S.W.3d at 125. Therefore, in considering the entire record, we conclude the evidence is legally and factually sufficient to support the trial court's finding that Ana "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see also In re C.J.G.*, 2019 WL 5580253, at *2 (stating that a "child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards").

## *Conclusion*

The trial court's order terminating Ana's parental rights is affirmed.

Liza A. Rodriguez, Justice