

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-22-00104-CV

**IN THE INTEREST OF J.M.T.**

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA00140
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
             Patricia O. Alvarez, Justice
             Liza A. Rodriguez, Justice

Delivered and Filed: August 3, 2022

AFFIRMED

William S. appeals from the trial court's order terminating his parental rights to his three-year-old daughter J.M.T.[1] We affirm.

### BACKGROUND

On January 24, 2019, the Department of Family and Protective Services filed an original petition for protection of a child, conservatorship, and termination of parental rights, seeking emergency removal of then two-month-old J.M.T. After a bench trial, William S.'s parental rights were terminated. William S. appealed. On July 1, 2020, this court held that the evidence was legally insufficient to support the trial court's finding that termination of the parent-child

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

relationship was in J.M.T.'s best interest and rendered judgment denying the Department's petition for termination. *In re J.M.T.*, No. 04-19-00807-CV, 2020 WL 3547971, at \*7 (Tex. App.—San Antonio July 1, 2020). On December 23, 2020, sitting en banc, this court issued a supplemental opinion denying the Department's motion to remand the cause for a new trial. *See In re J.M.T.*, 617 S.W.3d 604, 614 (Tex. App.—San Antonio 2020, no pet.) (en banc).

On June 29, 2021, the Department filed a petition to modify, which sought termination of William S.'s parental rights. The Department alleged that Williams S. had violated section 161.001(b)(1)(C), (D), (E), (K), (N), (O), and (P). The Department also sought termination of his rights based on section 161.004. After another bench trial, on February 16, 2022, the trial court signed an order terminating William S.'s parental rights. William S. appealed and brings the following two issues: (1) whether the evidence was legally or factually sufficient to support the trial court's finding of material and substantial change under section 161.004 of the Family Code; and (2) whether the evidence was legally or factually sufficient to support termination under section 161.001(1)(N), (O), and (P).

## ALTERNATE GROUNDS FOR TERMINATION

Termination of parental rights "can be achieved after a prior order denying termination of the parent-child relationship through either section 161.004 or section 161.001." *In re H.L.H.*, No. 10-16-00254-CV, 2018 WL 1321750, at \*13 (Tex. App.—Waco Mar. 14, 2018, no pet.). Using section 161.004 is "the only way that the trial court can terminate a parent's parental rights to a child based on evidence presented in a prior termination proceeding regarding the parent-child relationship." *Id*. Thus, when the Department seeks termination after a prior order denying termination, a trial court may terminate parental rights (1) under section 161.001, which requires clear and convincing evidence of acts or omissions having *occurred since the prior denial* of termination, or (2) under section 161.004, which requires clear and convincing evidence of an act

or omission under section 161.001 that *occurred prior to the denial* and evidence of a material and substantial change since the prior denial of termination. *In re N.A.V.*, No. 04-19-00646-CV, 2020 WL 1250830, at *3 (Tex. App.—San Antonio Mar. 17, 2020, pet. denied). Here, the Department sought termination through both sections 161.001 and 161.004.

## SECTION 161.004

Section 161.004 provides for termination of parental rights after denial of a prior petition to terminate:

> (a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:
>
> > (1) the petition under this section is filed after the date the order denying termination was rendered;
> >
> > (2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;
> >
> > (3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and
> >
> > (4) termination is in the best interest of the child.
>
> (b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

TEX. FAM. CODE § 161.004.

On appeal, William S. argued that the trial court's order of termination did not clearly make a finding pursuant to section 161.004. Because we construed the trial court's order as ambiguous on this issue, we abated the appeal and remanded the cause so the trial court could clarify. On July 1, 2022, the trial court signed a Reformed Order Modifying Order of Termination, which makes the following findings pursuant to section 161.004:

> (1) The petition [to modify] was filed after the date the order denying termination was rendered;

(2) The circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date the order denying termination was rendered;

(3) The parent committed an act listed under section 161.001 before the date the order denying termination was rendered; and

(4) Termination is in the best interest of the child.

Therefore, the trial court has clarified that William S.'s rights were terminated pursuant to section 161.004.

MATERIAL AND SUBSTANTIAL CHANGE OF CIRCUMSTANCES

On appeal, William S. argues that the evidence is legally and factually insufficient to support the trial court's finding pursuant to section 161.004 of substantial and material change since the date the order denying termination was rendered. Here, this court rendered judgment denying the Department's previous petition to terminate on July 1, 2020. *See In re J.M.T.*, 2020 WL 3547971, at *1. According to William S., the Department failed to offer clear and convincing evidence at trial of a material and substantial change in the circumstances of one of the parties to this lawsuit since that date.

In reviewing the legal sufficiency of the evidence to support the trial court's finding, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (citation omitted). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (citation omitted). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id*. at 346.

According to William S., the evidence at trial showed that J.M.T.'s circumstances at the time of trial were the same as they were on July 1, 2020, the date this court rendered judgment dismissing the Department's prior petition to terminate. J.M.T. was living in the same foster home and thriving. Further, he argues there was no evidence of any change of circumstances with respect to any of the other parties to this proceeding. With regard to his own circumstances, William S. argues the evidence showed that "he was not in compliance with his court-ordered services at any point during the pendency of the case" and that "he has been in and out of jail throughout the pendency of the case." "Further, all the State's exhibits pertaining to [his] criminal activity reference criminal activity that was engaged in before July 1, 2020." While he "concedes [his] current circumstances could lead to continued incarceration or probation, this was no less the case in July of 2020." Accordingly, he argues there was no evidence presented at trial to support the court's finding of a material and substantial change of his circumstances. In response, the Department argues that William S.'s failure to engage with the Department since July 1, 2020 qualifies as a material and substantial change under section 161.004.

"[T]here are no definite guidelines as to what constitutes a 'material and substantial change in circumstances' to terminate parental rights under section 161.004." *In re F.M.E.A.F.*, 572 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (quoting *In re A.L.H.*, 515 S.W.3d 60, 89 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)). For example, the Fourteenth Court of Appeals determined that a material and substantial change existed under section 161.004 (1) when the parent was adjudicated guilty of a crime and sentenced to prison after the prior order, *see In re C.A.C.*, No. 14-12-00396-CV, 2012 WL 4465234, at *9 (Tex. App.—Houston [14th Dist.] Sept. 27, 2012, no pet.); (2) when a parent failed to complete a family service plan by failing to visit the child and attend medical appointments, *see In re M.J.W.*, No. 14-16-00276-CV, 2016 WL 4206046, at *8 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, pet. denied); and (3) when a

parent failed to comply with the family service plan and was incarcerated for state jail felonies, *In re F.M.E.A.F.*, 572 S.W.3d at 726. The Amarillo Court of Appeals has held that there is evidence of a material and substantial change in the parents' circumstances when they failed to maintain contact with the Department. *See In re J.R.*, No. 07-12-00003-CV, 2012 WL 1605738, at *5 (Tex. App.—Amarillo May 8, 2012, no pet.). The court noted that since the denial of the petition to terminate, the parents' lives had "remained the same: unstable." *Id*. "However, their continued instability has manifested itself in new ways, ways that have now impacted their relationships with their children and the Department such that their own circumstances have materially and substantially changed." *Id*. The court noted that the parents "had refused to maintain regular contact with the Department and, in the last conversation about two weeks prior to the hearing, had refused to disclose to the Department their current address." *Id*. The court held that the parents' "continued instability and recent disinclination to cooperate at all with the Department" supported the trial court's finding of material and substantial change. *Id*.

Here, the caseworker testified at trial she had been working on this case since August 2020, one month after the denial of the previous petition to terminate. When she received the information that the previous order of termination had been reversed, she had already been attempting to locate William S. because of another legal case involving J.M.T.'s younger brother. She visited several addresses and contacted multiple phone numbers. She even tried contacting "some of his probation officers for information." The caseworker then received a phone number for William S., but the person who answered claimed the caseworker had the wrong number.

On September 10, 2020, the caseworker was able to reach Cassandra T. (J.M.T.'s mother whose rights were terminated) on the phone. Cassandra T. was with William S. and handed him the phone. The caseworker informed William S. that the order of termination had been reversed and he had possessory rights to J.M.T. The caseworker asked to meet with William S., and he

agreed to meet the following day. The caseworker testified she told William S. the purpose of the meeting was to provide William S. with a copy of the family service plan, as well as to facilitate a visit between him and J.M.T. The caseworker testified that William S. appeared to understand. However, the following day, William S. did not appear for the meeting. The caseworker again attempted to contact William S. but was not able to do so. The caseworker testified that a service plan was created for him and filed with the court.

The caseworker testified that in October 2020, she attempted to reach William S. at the last phone numbers she had for him. She tried to reach him through numbers she had for relatives. In completing a VineLink search, she saw that William S. was in jail in Bexar County, but had been released within twenty-four hours. So, she was not able to make contact with him there. She attempted to visit him at an address she retrieved from FINDRS. On November 2, 2020, she emailed his Comal County probation officer to inquire whether she had an updated contact information for him. The probation officer said that she had also been unable to contact William S. "and was looking to file a motion to revoke his probation." The caseworker tried the phone number given by the probation officer but was not able to reach William S. The caseworker also sent him a Facebook message asking that he contact her.

The caseworker testified that in December 2020, she sent William S. an email to an address provided by Cassandra T., but never received a response from him. According to the caseworker, Cassandra T. and William S. were in a relationship at that time. In January 2021, the caseworker again sent another email, but received no response. In February 2021, she completed a VineLink search, which indicated that William S. was on probation in Bexar County but provided no additional information to locate him. The caseworker reached out to the probation officer in Bexar County. In March 2021, she sent a letter to an address found for William S., but received no response. In April 2021, she performed more VineLink searches but found nothing other than that

William S. was still on probation. In May 2021, the caseworker sent a certified letter to an address in Tennessee, which she had found on FINDRS, because she had exhausted all San Antonio addresses. She never received any response from William S.

Because William S. also had a companion case involving J.M.T.'s sibling, the caseworker made efforts to find William S. for that case as well. In June 2021, she reached out to the Comal County probation officer, but the probation officer gave her an address at which the caseworker had already attempted to locate William S. The probation officer did give the caseworker a different phone number, but when the caseworker attempted to call, the number was not accepting calls. In July 2021, the caseworker also reached out to the Bexar County probation officer and was given another phone number, which the caseworker also tried but there was no answer. In October 2021, more than a year after William S. agreed to meet with the caseworker, she finally located William S. in Bexar County jail. The caseworker testified she met with William S. at the jail and asked him where he had been and why he had not made any attempts to be involved with J.M.T.'s case. When asked how William S. responded, the caseworker testified,

> He didn't have much of a response. He told me that he thought his rights were terminated to [J.M.T.]. And then I asked him if he remembered our conversation back in September of 2020 where I told him that that [his parental rights regarding J.M.T.] had been reversed. He told me that [Cassandra T.] told him his rights had been terminated after that. And I informed him that she might have been talking about the termination regarding [J.M.T.'s sibling], which was [J.M.T.]'s younger brother.

The caseworker testified that in September 2020, William S. had an outstanding warrant from Comal County for previous theft charges and violating probation in Comal County. At trial, the caseworker was asked whether William S. gave any indication he had been on the run from outstanding warrants when she met with him in October 2021. The caseworker testified, "He did tell me that he never reached out to me, because he believed I had set up [Cassandra T.] to get

arrested at the last parent-child visit she had. And he believed I was trying to set him up to get arrested as well."

The caseworker testified that she then attempted to go over William S.'s family plan with him, but he got upset as she "started to go over the concerns of the Department and refused to continuing meeting with" her. According to the caseworker, William S. "began to talk over [her]" and did not agree with the concerns raised by the Department. "[H]e got up and started knocking on the door for them to take him back and kind of just [waved her] off." The caseworker went back to the jail to meet with him on December 31, 2021. She provided him with an update on J.M.T. and told him that under his service plan, he needed to complete parenting classes, individual counseling, domestic violence classes, and to demonstrate appropriate housing and income. The caseworker testified William S. had not provided any certificates of completion for these services.

William S. testified at trial that he was in Comal County jail. He claimed that he did not recall the caseworker contacting him in September 2020 or setting up an appointment the next day to talk to him about J.M.T. He also did not recall the caseworker informing him in September 2020 that termination of his parental rights to J.M.T. had been reversed on appeal. He claimed the first time he realized termination of his parental rights had been reversed was October 2021 when the caseworker visited him in jail. He testified he walked out of the meeting because the caseworker "was making out like [he] was an unfit father." He testified that he was under the impression through Cassandra T. that he no longer had any parental rights. He testified he was aware of the appeal but claimed to not have any knowledge the termination had been reversed on appeal. When asked what steps he had taken to check into the status of his appeal, he admitted he "didn't check into it."

In considering the above evidence, we note that the trial court, as factfinder, is sole judge of the weight and credibility of the evidence. *In re J.O.A.*, 283 S.W.3d at 346. Thus, the trial court

could have found the caseworker's testimony about contacting William S. in September 2020 credible and William S.'s testimony about the same meeting not credible. *See id*. Accordingly, there was evidence from which the trial court could have concluded that although William S. was notified that the order terminating his parental rights to J.M.T. had been reversed, he not only failed to communicate with the Department, but actively sought to conceal his whereabouts from the Department. Further, there was evidence that after the order terminating his parental rights was reversed, William S. was incarcerated for violating his probation. We thus conclude the evidence is legally sufficient to support the trial court's finding of a substantial and material change in William S.'s circumstances.

Further, although William S. presented testimony that he had no knowledge of the reversal of the termination order until October 2021, the trial court could have disbelieved his testimony. *See id.* Accordingly, we conclude the evidence is also factually sufficient to support the trial court's finding.

### CONCLUSION

William S. does not challenge the sufficiency of the other elements to support the trial court's finding supporting termination pursuant to section 161.004. That is, William S. does not contest the trial court's finding that he committed an act listed under section 161.001 before the date the order denying termination was rendered, or that termination of his parental rights is in the best interest of J.M.T. *See* TEX. FAM. CODE § 161.004(a)(3), (4). Accordingly, we affirm the order terminating his parental rights to J.M.T.[2]

Liza A. Rodriguez, Justice

---

[2]We note that William S. does challenge the trial court's alternative grounds for termination under section 161.001(1)(N),(O), and (P), arguing that there was no evidence presented that he committed any of these acts *since the date the order denying termination was rendered*. However, as we have held the trial court did not err in terminating William S.'s parental rights based on section 161.004, we need not reach his issues regarding termination under section 161.001.