

## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

___

No. 07-24-00291-CV

___

**IN THE INTEREST OF J.G., D.G., AND A.G., CHILDREN**

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 097794-E-FM, Honorable Carry Baker, Presiding

January 28, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Mother appeals from a final order terminating her parental relationship with her three children, JG, DG, and AG.[1] The latter ranged from three to four years old when trial began in May 2024. Ultimately, the trial court approved termination on several statutory grounds, including § 161.001(b)(1)(D) and (E). It also found that termination favored the children's best interests. Mother attacks on appeal solely the finding related to best interests and contends that it lacked the support of legally and factually sufficient evidence. We affirm.

___

[1] To protect the privacy of the parties involved, we refer to the children by their initials, and family members by their relationship to the child. See TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

*Analysis*

The applicable standards for reviewing sufficiency of the evidence are discussed in *In re A.M.*, No. 07-21-00052-CV, 2021 Tex. App. LEXIS 5447 (Tex. App.—Amarillo July 8, 2021, pet. denied) (mem. op.).  We apply them here.

In assessing the sufficiency of the evidence supporting a finding concerning the best interests, we generally consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976).  Those factors guide our analysis here, as well.  Furthermore, not all need favor termination, however.  "The absence of evidence about some . . . would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child."  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2005).  And, all must remember that the best interests of the children, not the parent, control.  *In re E.P.*, No. 07-23-00449-CV, 2024 Tex. App. LEXIS 3671, at *7 (Tex. App.—Amarillo May 29, 2024, pet. denied) (mem. op.).

We also note that evidence supporting the predicate statutory grounds for termination may be considered in assessing the best interest of a child.  *In re M.D.*, No. 07-21-00149-CV, 2021 Tex. App. LEXIS 7217, at *1-2 (Tex. App.—Amarillo Aug. 30, 2021, pet. denied) (per curiam) (mem. op.); *see also In re T.C.*, No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.) (noting that a parent who chooses to forgo a challenge to predicate ground findings tacitly concedes that sufficient evidence supports those findings).  Furthermore, evidence of ongoing parental drug use is particularly significant because past conduct often portends future action.  *In re A.M.*, Nos. 07-18-00047-CV, 07-18-00048-CV, 2018

2

Tex. App. LEXIS 3688, at *7 (Tex. App.—Amarillo May 23, 2018, pet. denied) (per curiam) (mem. op.); *see also In re K.J.B.*, No. 07-21-00235-CV, 2022 Tex. App. LEXIS 4134, at *5 (Tex. App.—Amarillo June 16, 2022, no pet.) (mem. op.) (noting "'[p]ast is prologue' all too often"). With this in mind, we turn to the case at hand.

To quote from mother's brief, "[she] focuses on her conduct after she began to take the case 'seriously.'" At that point, mother stopped using drugs, went to inpatient rehab to begin her sobriety, and is taking other steps to maintain that sobriety going forward. So, "she has taken steps to mitigate the cause of danger to the children in the future."

That effort to take the case "seriously" began after the children were removed from the home of their grandmother. They were so removed about a month before trial convened on May 21, 2024. Thus, over the ensuing few weeks and as the proverbial clock approached the midnight hour, she deemed it important to commence performing services, participating in a drug rehabilitation program, and undertaking other measures to secure the return of her children. Yet, none of those services or programs had been completed at the time trial began.

Furthermore, earlier in May 2024, mother again tested positive of methamphetamine. So too did at least two of the three children test positive for that drug. Said testing also revealed the presence of cocaine within one or more of the children. Though mother denied ever ingesting cocaine, she admitted to smoking methamphetamine. Her ingestion of that drug often occurred while on her way to

3

grandmother's house to undertake sporadic visitations with the children.[2] At times, it also happened in the garage of the house while laundering clothes.

As for housing at the time of trial, mother lived with her mother and stepfather; that is, in the same home in which the children somehow were exposed to narcotics mother denied taking. She also had pending an application to move into a shelter home. Little was said about employment though. Mother once worked at a hotel cleaning rooms. The establishment paid her $4 per room. She since quit that job.

Other evidence indicated that mother had been indicted for possessing controlled substances in 2020. That resulted in the deferral of her adjudication and three years of probation. Apparently, the latter term was extended for an additional year. Comparison of this with the foregoing means mother continued to use controlled substances despite being on probation for possessing a controlled substance and after the removal of her children. She continued to use them despite the risk of incarceration and the loss of her children.

Apparently, the trial court recessed the May trial to mid-summer. When the proceeding resumed, mother still had yet to complete all of her services. More importantly, she had pending against her criminal charges related to her exposing her children to the controlled substances.

Once removed from grandmother, the children came to reside in a foster home. Effort was made to find placement with a relative, but it had yet to prove successful.

---

[2] Apparently, those visits were unsupervised and contrary to a term of mother's service plan.

4

In short, evidence suggests mother improved. Yet, she waited over a year to begin. Trial loomed and her children tested positive for drugs when she thought it was time to act. Until then, she viewed her children living with her mother and her sporadic visitation of them as sufficient. And, most importantly, little to no evidence indicates her ability to permanently remain drug free or provide those children with a stable, safe home. Again, she continued to ingest controlled substances while on probation for possessing such contraband. She continued to use drugs as the clock ticked toward the hearing to determine whether her parental rights would be terminated.

One can hope for improvement. But the best interests of children should not rest on hope, belated caring by a parent, and tardy, incomplete effort by that same parent. Recent improvement alone is not sufficient to avoid termination of parental rights. *In re K.D.C.*, No. 02-12-00092-CV, 2013 Tex. App. LEXIS 13239, at *45-46 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.); *see also In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (recent, short-term improvements do "not conclusively negate the probative value of a long history of drug use and irresponsible choices").

Considering the evidence as a whole, we find it legally and factually sufficient to support the trial court's finding that termination of parental rights was in the best interests of the children. We affirm the final order of the trial court.


Brian Quinn
Chief Justice


5